IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS - EASTERN DIVISION

| | |
|---|---|
| THERESA TRAN, *et al*., | |
| Limitation Plaintiffs, | |
| v. | Case No. 1:22-CV-06478 |
| Lana Batochir, Marija Velkova and Jacob Houle | Honorable Joan B. Gottschall |
| . | |
| Claimants. | |

**LIMITATION PLAINTIFFS' MEMORANDUM IN OPPOSITION TO CLAIMANTS'**
**JOINT MOTION TO LIFT THE INJUNCTION/STAY IN THIS ACTION**

NOW COME the Limitation Plaintiffs, and in opposition to the Claimants' Motion to Lift Injunction and Stay, state as follows:

**INTRODUCTION**

Pursuant to the Limitation Act and Rules, Theresa Tran ("Tran") and Chicago AquaLeisure LLC ("AquaLeisure"), as owners of the vessel La Aquavida (the "AQUAVIDA") filed their Complaint in Admiralty For Exoneration From or Limitation of Liability" on November 18, 2022 (the "Limitation of Liability Complaint") regarding an incident which occurred in the navigable waters of Lake Michigan involving several potential claimants. (the "Incident") (Doc. No. 1).

After the Limitation of Liability Complaint was filed, this Court entered an Order Restraining All Suits and Directing Monition to Issue on November 28, 2022 (the "Stay/Injunction Order") (Doc. No. 11) Among other things, the Stay/Injunction  Order stayed all actions against Tran, AquaLeisure and the AQUAVIDA relating to the Incident and directed that all persons

having claims regarding the Incident file their claims with the Clerk of the Court on or before January 25, 2023.

Claimant Lana Batochir ("Batochir") filed a Claim and Answer in this case. (Doc. No. 16,17). Batochir's Claim states that she filed a Complaint in the Law Division of the Circuit Court of Cook County against Joseph Neverauskas ("Neverauskas"), Tran and AquaLeisure (Doc. No. 16, par. 3-4) Batochir's Claim and Answer state that Batochir's Complaint alleges that the negligent actions of Neverauskas, as driver and Tran and AquaLeisure as owners caused personal injuries to her.(Doc. No. 16, par. 5; 17, p. 3) Although Batochir's Complaint is not attached to Batochir's Claim, the jurisdictional minimum amount in controversy for a case filed in the Cook County Law Division is at least $30,000.00 (Circuit Court of Cook County, General Order No. 1.2,2.1(a) County Department)

Claimant Marija Velkova ("Velkova") filed a Claim and Answer in this case. (Doc. No. 19, 20). Attached to Velkova's Claim is a copy of the Complaint she filed in the Law Division of the Circuit Court of Cook County against Neverauskas, Tran and AquaLeisure. (Doc. No. 19-1) Velkova's Complaint is a one count complaint which alleges damages as a result of negligence of Neverauskas as driver, and Tran and AquaLeisure as owners (Doc. No. 19-1, 20, p.3) Attached to Velkova's Complaint is an Illinois Supreme Court Rule 222(b) Affidavit verifying that Velkova seeks damages in excess of $50,000.00 plus costs regarding the Incident.(Doc. No. 19-1, p.7)

Claimant Jacob Houle ("Houle") filed a Claim in this case and attached a Complaint which Houle states he intends to file in the Law Division of the Circuit Court of Cook County against Neverauskas, Tran and AquaLeisure. (Doc. No. 29-1) Houle's Complaint is a one count complaint alleging that he was injured as a result of the negligence of Neverauskas, Tran and AquaLeisure. (Doc. No. 29-1) The request for relief in the Houle Complaint states that he seeks damages in

excess of $30,000 plus costs. (Doc. No. 29-1, p.3) The pleadings filed by all three Claimants allege that Neverauskas, Tran and AquaLeisure are joint tortfeasors who caused Claimants' injuries

Pursuant to the Limitation Act and Rules, Tran and AquaLeisure deposited $71,637.00 with the Clerk of this Court which is the value of the vessel after the Incident (the "Limitation Fund"). An Affidavit of Value is attached to the Limitation of Liability Complaint stating that the post incident market value of the vessel is $71,637.00 (Doc. No. 1-1) Nothing currently before this Court shows that the Claimants have obtained an appraisal of the value of the vessel in excess of the Limitation Fund. Thus, the total of all three Claimants' currently stated claims is at least $110,000.00 plus costs, just based on the Cook County Law Division jurisdictional minimum amount at issue for Batochir's Complaint, the Velkova Supreme Court Rule 222(b) Affidavit and the $30,000.00 plus costs request for relief in Houle's Complaint. The total of all there Claimants' currently stated claims is more than 1.5 times the amount of the $71,637.00 Limitation Fund. The Claimants' pleadings allege severe and permanent injuries, so it is reasonable to believe that the Claimants actually seek damages well in excess of $110,000.00.

## ARGUMENT

In their Motion to Lift the Injunction, the Claimants recognize the right of the Limitation Claimants to limit their liability in this proceeding. *See*, "Memorandum in Support of Joint Motion to Lift Injunction and Stay This Limitation Action." including pp. 6, 7, 10, 11.[1] By contrast, the Claimants assert a limited or qualified right – to press their claims up to the extent of the limitation.

The purpose behind the Claimant's Motion is to change the playing field, allowing them to proceed in state court without adequately protecting Tran and AquaLeisure's clear rights under the

---

[1]"By its own terms, the Limitation Act protects the right of the vessel owners to limit their liability to the value of the vessel, provided that the events or circumstances giving rise to the damage occurred without the vessel owner's privity or knowledge." *Lewis v. Lewis & Clark Marine, Inc*., 531 U.S. 438, 453 (2001).

Limitation Act. Claimants unreasonably argue that this Court should permit their state court actions to proceed without adequate protections in place to protect Tran and AquaLeisure's rights under the Limitation Act and Rules. In fact, nowhere in the Claimants' Motion do they suggest why the Limitation Plaintiffs should be hauled into the state court cases, litigate their claims for years before trying the matter to a jury, all without protecting the rights of the Limitation Plaintiffs. The Limitations Plaintiffs assert then when this Court reviews the applicable law and balances the equities which the Claimants have failed to address - that the Law, the facts and equity mandate that this action should remain before this Court and proceed to a resolution.

## I. MOTIONS TO LIFT THE INJUNCTION IN LIMITATION OF LIABILTY CASES CAN ONLY BE GRANTED IN NARROW AND LIMITED CIRCUMSTANCES WHERE THE VESSEL OWNERS' RIGHTS UNDER THE LIMITATION ACT AND RULES ARE PROTECTED

Claimants' Motion seeks to avoid and circumvent: a) this Court's exclusive jurisdiction over limitation of liability issues; and b) the fair and orderly adjudication of claims provided for by the Limitation Act and Rules.("Claimants' Motion") (Doc. No. 33). The Motion seeks to avoid the clear intent of Congress regarding the adjudication of maritime claims.

The Limitation Act and Rules and prevailing judicial authority provide very narrow circumstances and limited exceptions where the Federal Courts will lift the stay of a limitation action and allow the claimants to proceed in state court. The Seventh Circuit's opinion in *In re Complaint of Holly Marine Towing, Inc.* 270 F. 3d 1086, 1090 (7th Cir. 2001) succinctly describes these narrow circumstances and limited exceptions, stating ". . . if the amount paid into court by the shipowner exceeds the tort claims against him, or if all the claimants stipulate that their claims will not subject him to liability beyond that amount, then he is fully protected, and, even if there are multiple claimants, the suits can continue in state court without endangering any interest that the Act protects."

Claimants' Motion and related filings fail to establish that these limited circumstances and limited exceptions apply to this case. The undisputed facts establish that neither of these limited circumstances and limited exceptions apply to this case.

The critical requirement is that the Limitation Plaintiffs' rights under the Limitation Act and Rules must be protected. Nowhere do the Claimants here provide that stipulation or protection. Claimants seek the expansive rights to litigate their claims in state court, and then in federal court once again. That is clearly not the intent of the Limitation Act given the facts of this case.

**A. The Claimants' Claims Exceed the Amount of the Limitation Fund**

The first exception under the *Holly Marine* applies when the amount paid into the court by the vessel owner exceeds the claimants' claims which is definitely not the situation in this case.

The Claimants' pleadings establish that their claims greatly exceed the amount of the Limitation Fund. As described in more detail above, Claimants' currently stated tort claims total at least $110,000.00 plus costs which is at least 150 per cent of the amount of the $71,637.00 Limitation Fund. Furthermore, Claimants' pleadings allege severe and permanent injuries so it is highly likely that the Claimants actually seek damages well in excess of $110,000.00. We would not be proceeding through this exercise if the Claimants were content with the funds lodged into the registry of this Court. Accordingly, the first "exception" under *Holly Marine* does not apply.

**B. *Holly Marine* Requires that All Claimants Stipulate to the Limitation.**

The second exception described in *Holly Marine* requires that *all claimants* stipulate that their claims will not subject the vessel owner to liability beyond the amount paid into the court in the limitation fund. *Holly Marine, Id*., at 1090. There, an estate and an injured party brought wrongful death and negligence actions in state court against three companies involved in an incident which occurred during the repair of a bridge over a navigable canal. The barge owner,

Holly Marine Towing, Inc., filed a limitation action and the District Court entered the injunction. The estate, the injured party and JLG, one of the other companies involved in the incident, filed claims: JLG's claim being for contribution against the barge owner as a joint tortfeasor.

The estate and the injured party filed a motion seeking dissolution of the Limitation Act injunction. In support of their motion, the estate and the injured party signed a stipulation ". . . that they would neither ask the state court to resolve any issue concerning the limitation of Holly's liability nor seek to enforce any judgment against JLG to the extent that such enforcement would expose Holly to liability in excess of its stake in the barge by reason of JLG's seeking contribution from Holly". *Holly Marine, Id.,* at 1088. The Appellate Court rejected the stipulation as inadequate because it did not protect the barge owner's rights under the Limitation Act from the contribution claim of JLG. The Court discussed in detail how the failure of JLG to sign the stipulation could subject the barge owner to liability in violation of its rights under the Limitation Act. *Holly Marine, Id.,* at 1088-1090. The Appellate Court reversed the District Court's decision granting the claimants' motion because JLG, the party seeking contribution from the barge owner, did not sign the required stipulation protecting the barge owner's rights provided for in the Limitation Act and Rules.

The Seventh Circuit determined that under those circumstances, the dissolution of the injunction deprived the barge owner from its statutory rights of limitation of liability provided by the Limitation Act and Rules and was an abuse of discretion by the District Court because the party seeking contribution did not sign the stipulation. *Holly Marine, Id.,* at 1090. That same logic applies here.

**C. Claimants' Proposed Concessions Do Not Protect Tran and AquaLeisure's Rights under the Limitation Act and Rules**

The lesson of the *Holly Marine* decision is that the rights of the vessel owner under the Limitation Act must be protected from all claims. The lesson and logic of the *Holly Marine* decision apply equally to this case, and the Claimants' Motion should be denied because the Claimants' Proposed Concessions do not protect Tran's and AquaLeisure's rights under the Limitation Act from all claims.

The Claimants' pleadings allege that they were injured as a result of the negligence of Neverauskas, Tran and AquaLeisure as joint tortfeasors. The Illinois Joint Tortfeasor Contribution Act provides a right of contribution among alleged joint tortfeasors even before judgment is entered. (the "Contribution Act") *740 ILCS 100/0.01 et seq.* Specifically, Section 2(a) of the Contribution Act states "Except as otherwise provided in this Act, where 2 or more persons are subject to liability in tort arising out of the same injury to person or property, or the same wrongful death, there is a right of contribution among them, even though judgment has not been entered against any or all of them" *740 ILCS 100/2.* The pleadings filed by the Claimants in this case allege that Neverauskas, as driver of the vessel and Tran and AquaLeisure, as owners of the vessel, are joint tortfeasors who caused the injuries to the Claimants. Therefore, Neverauskas has a potential claim for contribution against Tran and AquaLeisure under the Contribution Act.

Nothing before this Court shows whether Neverauskas, as the driver of the vessel, has yet even been served with either Batochir's Complaint or Velkova's Complaint, and he could not have been served with the yet to be filed Houle Complaint. However, this Court's Stay/Injunction Order did not preclude Batochir and Velkova from serving Neverauskas with their Complaints. There is not only the real possibility but perhaps a strong likelihood that Neverauskas will file a claim for contribution against Tran and AquaLeisure after he is served with the complaints from the three

Claimants. Claimants cannot claim that Neveauskas has consciously chosen not to file a contribution claim against Tran and AquaLeisure.

Claimants' Motion fails to mention Neverauskas' potential contribution claim but this Court may, and Tran and AquaLeisure believe this Court must consider this potential contribution claim. Neverauskas' contribution claim against Tran and AquaLeisure makes this a case involving a potential claimant who has not signed any stipulation or agreed to any concession which would protect Tran and AquaLeisure's right to limit their liability under the Limitation Act and Rules.

Thus, Claimants' Motion must fail because not all claimants have signed stipulations or agreed to binding concessions which protect Tran and AquaLeisure from liability beyond the limits of the Limitation Act. The other inadequacies of the Claimants' Proposed Concessions are discussed below. However even if this Court were to find that the terms of the Proposed Concessions are adequate to protect Tran and AquaLeisure from the Claimants' claims, the Proposed Concessions are inadequate because they fail to protect Tran and AquaLeisure from Neverauskas' contribution claim and because Neverauskas has not joined in the Proposed Concessions or otherwise agreed to limitations protecting Tran and AquaLeisure's rights under the Limitation Act..

The Proposed Concessions only refer to Claimants' claims and ignore Neverauskas' contribution claim. The Proposed Concessions leave the Limitation Plaintiffs exposed to liability in violation of their rights under the Limitation Act and Rules, the same exposure discussed by the Court in *Holly Marine* and upon which the Court reached its decision. Several District Court decisions have adopted the reasoning of the Seventh Circuit in *Holly Marine* and have denied

motions to lift the stay in limitation cases where not all the claimants have signed or agreed to the required protective stipulations.

In the case *In re Complaint of RQM, LLC Owner of the Motor Yacht Bad Influence II*, 2011 WL 98472, (N.D. Ill. 2011) Judge St. Eve refused to lift the stay because not all claimants joined in a stipulation to protect the vessel owner. In that case, an injured party sued the vessel owner and two other companies. The vessel owner responded with a limitation action. One company claimed a right of contribution and refused to sign a stipulation protecting the vessel owner's right to limit its liability. Based on that failure of complete protection for the limitation plaintiffs, the District Court concluded that it could not find that the vessel owner's right to limitation of liability was protected and the District Court properly denied the motion to lift the stay.

In *Matter of Great Lakes Dredge and Dock Company, LLC,* 423 F. Supp. 3d 246, 251- 252 (E.D. Va. 2019) the District Court relied, in part, on *Holly Marine* in denying a motion to lift the stay because not all claimants joined in the stipulation to protect vessel owner's rights. The injured party sued the owner of the vessel, Great Lakes and the owner of the shipyard in state court. Great Lakes then filed a limitation action. The shipyard filed a contribution claim and refused to sign a stipulation protecting the vessel owner's right to limit its liability. The District Court rejected the injured party's argument that the shipyard's contribution claim was merely derivative to the inured party's claim, and ruled that the injured party's stipulation did not also protect the vessel owner from the shipyards' contribution claim.

Furthermore, Claimants cannot ignore Neverauskas' contribution claim simply because he has not yet filed a contribution claim. While the cases discussed above involve contribution claims that were filed, there is persuasive precedent for also applying the same careful analysis and protective standards for yet unfiled contribution claims that could be asserted against the owner of

the vessel. For example, the District Court in *Matter of J.F. Brennan Company, Inc.* 2021 WL 1043344, p.3 (E.D. Wisc. 2021) cited the *Holly Marine* decision and stated, in a case involving an Illinois state court tort case, "Where there are potential contribution claims from third parties that have not signed a stipulation agreeing to limitation of their claims, the court must determine whether the shipowners' rights are nonetheless protected"

Furthermore, the Appellate Courts in several other Circuits have recognized the necessity of protecting vessel owners from even potential but unfiled contribution and indemnity claims. In *Odeco Oil and Gas Company v. Bonnette*, 4 F.3d 401 (5th Cir. 1993) ("*Odeco I*") the Fifth Circuit ruled that the District Court erred in lifting the stay because it failed to consider potential, but unfiled claims for contribution and indemnity that might be asserted in the future. The Court remanded the case to the District Court to consider how these potential but unfiled contribution and indemnity claims could affect Odeco's rights under the Limitation Act. *Odeco I, Id.,* at 405.

By the time this case was appealed again in *Odeco Oil and Gas Company v. Bonnette*, 74 F.3d 671, 675 (5th Cir. 1996) ("*Odeco II*"), the contribution and indemnity claims were actually filed. However, the Court again ruled that the District Court erred in granting the motion to lift the stay because the claimants holding contribution and indemnity claims were claimants under the Limitation Act, and their refusal to sign a stipulation protecting Odeco's rights violated Odeco's rights under the Limitation Act. *Odeco I*, *Odeco II*, and the cases cited below are authority for this Court to deny the Claimants' Motion because their Proposed Concessions ignore and do not protect Tran and AquaLeisure from a contribution claim from the alleged joint tortfeasor driver, Neverauskas.

In *Beiswenger Enterprises Corp. v. Carletta*, 86 F. 3d 1032, 1042 (11th Cir. 1996) the Court discussed the necessity of addressing and resolving potential, unfiled contribution claims against

a vessel owner stating: "Therefore, to determine whether a multiple- claims- inadequate fund situation exists, potential claims for indemnity or contribution from the vessel owner's co-defendants must be separately considered".

In *Complaint of Dammers & Vanderheide & Scheepvaart Maats Christina B.V.*, 836 F. 2d 750, 757 (2d Cir. 1988) the Court also discussed the necessity of addressing and resolving potential, unfiled claims against the vessel owner stating: "As long as there is a potential set of circumstances in which the shipowner could be held liable in excess of the limitation fund, the reasonable prospect of claims for indemnification should constitute a multiple claimant situation necessitating a *concurus*." Therefore, Claimant's Motion should be denied, for among other reasons, because Tran and AquaLeisure's rights under the Limitation Act are not protected from Neverauskas' contribution claim.


## II. THE PRIMARY CASE AUTHORITY CITED BY CLAIMANTS DOES NOT SUPORT THEIR MOTION

Claimants base their Motion on their "Proposed Concessions by Claimants" (Doc. No. 33-2) and claim that they meet the requirements set forth by the Seventh Circuit in the case *In Re Illinois Marine Towing*, 498 F. 3d. 645 (7th Cir. 2007). However, the facts at bar are similar to *Holly Marine* case and are vastly different that the facts in the *Illinois Marine Towing* case.

*Illinois Marine Towing* involved the driver of and the owner of a vessel. In that case, the Seventh Circuit ruled that the District Court did not abuse its discretion when it granted claimants' motion to lift the stay based on specific facts of that case and the terms of the stipulation the claimants filed in that case which, the Court decided, ensured that all limitation of liability issues would be decided by the District Court. *Illinois Marine Towing*, *Id*., at 653. That is not what is presented here.

Although the driver of the vessel in the *Illinois Marine Towing* did not sign the stipulation, both the District Court and the Seventh Circuit determined that the vessel owner was protected from liability in excess of the limits of the Limitation Act and Rules because the driver of the vessel signed a "Waiver of Claims." Accordingly, the vessel owner did not and could not face a contribution or indemnity claim from the driver of the vessel given the executed "Waiver of Claims." *Illinois Marine Towing, Id*., at 654. This was the important and distinguishing fact which the District Court emphasized in its decision and which the Seventh Circuit emphasized in its decision as well. In other words, whether the Limitation Claimants faced a peril beyond the limitation is central to the analysis.

*Illinois Marine Towing* also fails to support the Claimants' Motion because the Stipulation filed there is quite different from the Claimants' purported Concessions here. While the first five paragraphs of Claimants' Proposed Concessions are similar to the only five paragraphs of the Stipulation filed in the *Illinois Marine Towing* case, the Claimants include two additional paragraphs. Paragraph 7 states in part ". . . **Claimants do not concede that limitation of liability is appropriate in this matter, nor do Claimants concede any of the limitation of liability issues raised by Limitation Plaintiffs in their Complaint in this matter** . . ." (emphasis supplied). In other words, the last of Claimants' "proposed concessions" takes away at least part of the prior proposed concessions which must, but do not protect Tran and AquaLeisure's rights under the Limitation Act.

Furthermore, the claimants in the *Illinois Marine Towing* case filed an actual binding Stipulation, not merely the non-binding Proposed Concessions as the Claimants have offered in this case. The Claimants' Proposed Concessions are inadequate because they fail to protect the Tran and AquaLeisure's rights under the Limitation Act and Rules. The Proposed Concessions

ignore the Neverauskas Contribution claim, and are merely proposals, not binding commitments or stipulations.

### III.    THE INTERESTS OF JUDICAL EFFICIENCY, JUDICIAL ECONOMY AND OF THE PARTIES SUPPORT DENIAL OF THE CLAIMANTS MOTION

This Court will ultimately decide the issues of limited liability regardless of the decision on Claimants' Motion.  However, it is in the best interests of all parties that the Court decide these issues sooner rather than later.  Tran and AquaLeisure have filed an Affidavit of Value (Doc. No. 1-1) to establish the amount of the Limitation Fund and the Claimants have failed to file any counter affidavit contesting the value of the Limitation Fund.  On February 20,2023 Tran and AquaLeisure served discovery requests on Claimants regarding the privity and knowledge issue, responses to which are overdue. (Doc. No. 30) *See* the Declaration of Randall Slade. Discovery on the limitation of liability issues can be completed expeditiously.

The status of this case is more advanced than the Batochir and Velkova state court cases, and Houle's yet unfiled case.  This Court can decide any challenge to the value of the Limitation Fund and decide the issue of Tran and AquaLeisure's limited liability relating to the privity or knowledge issue much more expeditiously and efficiently than the Claimants can proceed with and complete their three cases in Cook County Court, considering that the average delay between filing and verdict in the Cook County Law Division was between 39 and 47 months. (2021 Annual Report of Illinois Courts, Statistical Summary at p. 81).

Furthermore it is not in the interests of judicial efficiency or economy or in the parties' best interests that they spend years and tens of thousands, and perhaps hundreds of thousands of dollars, in expert fees, attorney fees and costs in state court if this Court determines that the Claimants' maximum recovery from Tran and AquaLeisure  is the $71,637 Limitation Fund.

While the Claimants have failed to provide any facts, evidence or argument why it would be better to permit the state claims to proceed first – the fact is that such a scenario would cause a lengthy state court proceedings before a jury, giving rise to an enormous record. The alternative is to allow the quicker federal action to proceed, and if this Court ultimately determines that there is no basis for limitation, this case can be easily transferred to the slower state court proceedings.

## IV. THE LIMITATION PLAINTIFFS WOULD BE MANIFESTLY PREJUDICED BY RETURNING THIS ACTION TO THE COOK COUNTY CIRCUIT COURT

As will be disclosed under FRCP 26(a)(1)(A), the Limitation Plaintiffs have a policy of insurance insuring the vessel in issue. (the "Policy of Insurance"). *See* attached Exhibit "A," and the Declaration of Theresa Tran. The Policy of Insurance has an "eroding" $1 million limit. Ex. A, at p. 7, par. 4. That is the extent of insurance for the vessel and these claims.

Pursuant to the Limitation Act and Rules, the Limitation Plaintiffs deposited $71,637.00 with the Clerk of this Court which is the value of the vessel after the Incident. While the Policy of Insurance for the Limitations Plaintiffs has been eroded by the amount of the funds equal to value of the vessel that were placed in the Court's registry, it has also been eroded by attorney's fees and expenses. If this cause were to be litigated to a jury in the Circuit Court of Cook County, it might well be that all of the attorney's fees, expenses and expert's fees incurred could erode that Policy of Insurance to the point that if the case returned to this Court, there might be nothing left even for the litigation expense of the further action here. Even if the Limitations Plaintiffs were to win, they would still lose.

## CONCLUSION

The applicable Seventh Circuit precedent, and the other decisions cited support denial of the Claimants' Motion. Furthermore, the Claimants' Proposed Concessions fail to protect Tran and Aqua Leisure's rights under the Limitation Act, including the failure to protect them from a

contribution claim from Neverauskas, the driver of the vessel. Given the facts of this case, the interests of judicial efficiency and judicial economy plus the best interests of the parties all show that this Court should address and decide the limitation of liability issues before allowing the state court cases to proceed. These factors strongly support denial of the Claimants' Motion and Tran and AquaLeisure request that this Court deny Claimants' Motion.

However, if this Court grants the Claimants' Motion Tran and AquaLeisure request that this Court specify conditions which clearly protect Tran and AquaLeisure's rights under the Limitation Act from all claims, including any claim that may be filed by Neverauskas. Tran and AquaLeisure also request that this Court set a discovery schedule with the goal of conducting a prompt hearing regarding the privity and knowledge issue and the value of the Limitation Fund if Claimants contest the Affidavit of Value. If the Court decides to grant Claimants' Motion, granting the Motion and conducting a prompt hearing on the value of the Limitation Fund and the limitation of liability issue of privity or knowledge need not be and should not be mutually exclusive. In fact, a prompt hearing on these issues is in the best interest of all parties.

Dated:          March 29, 2023.                     Respectfully Submitted,

                                               /s/Robert J. Franco

Robert J. Franco                                    One of the Attorneys for the Limitation
John J. Moroney                                     Plaintiffs Chicago AquaLeisure, LLC and
Randall W. Slade                                    Theresa Tran
Franco Moroney Buenik, LLC
500 West Madison Street, Suite 3900
Chicago, Illinois 60661-2510
(312) 469-1000
Robert.franco@francomoroney.com
John.moroney@francomoroney.com
Randall.slade@francomoroney.com

# Exhibit A



# Cover Note

| | |
|---|---|
| **Declaration Number:** | CSRYP/212464 |
| **Assured:** | Theresa Tran dba Chicago AquaLeisure, LLC |
| **Assured's Address:** | PO Box 64514<br>Chicago<br>IL 60664<br>USA |
| **Assured's Agent:** | Offshore Risk Management Ltd<br>807 Forrest Avenue<br>Cocoa<br>FL 32922 |
| **Scheduled Vessel:** | La AquaVida, 2002 37' Four Winns with Mercruiser Twin 320 HP gas engine,<br>GFNCY00CE203 |
| **Period of Cover:** | from April 11, 2022 00.01 LST to April 11, 2023 00.01 LST |

**Cover and Respective Insured Limits:**

| Section | Sum Insured | Deductible |
|---|---:|---:|
| **A Hull** | US$ 75,000 | US$ 6,000 |
| (Named Windstorm Deductible) | | US$ 12,000 |
| Tender/Dinghy | not covered | not applicable |
| Non-Emergency Towing | US$ 500 | not applicable |
| **B Third-Party Liability** CSL | US$ 1,000,000 | US$ 2,500 |
| Crew Liability Extension within CSL | not covered | not applicable |
| Commercial Passenger Liability Extension within CSL | not covered | not applicable |
| Limited Pollution Extension within CSL | US$ 1,000,000 | US$ 2,500 |
| **C Medical Payments** | US$ 10,000 | US$ 100 |
| **D Uninsured Boaters** | US$ 100,000 | not applicable |
| **E Trailer** | not covered | not applicable |
| **F Personal Property** | US$ 5,000 | US$ 500 |

| | |
|---|---|
| **Total Premium:** | US$ 3,193 cancelling returns only + US$ 35 Certificate Fee |
| | In the event of cancellation by the Assured minimum of 25% of premium deemed earned. |
| **Named Operator:** | Tran Theresa |

**Concept Special Risks Ltd**
+44 (0) 1943 882 700 · www.special-risks.com
Unity House · 2 Station Court · Station Road · Guiseley · LEEDS · LS20 8EY · United Kingdom

**Laid Up Period:**     November 1, 2022 to April 1, 2023, ashore, at Diversey Harbor, 2601 N. Cannon Drive, Chicago, IL 60614

**Navigational Limits:**     Warranted that the Scheduled Vessel is confined to Lake Michigan - not to exceed 50 miles offshore.

**Insuring Agreement Wording:**

Commercial Yacht Insuring Agreement (SYP/22/COM). Amended to include Bareboat Charter. Bareboat Charter conditions to apply when operating under Bareboat Charter. It is warranted that all participants will sign a release of liability, regardless of whether they are paying or complimentary, prior to the commencement of the charter activity, unless otherwise agreed by us.

**Additional Warranties, Terms and Conditions:**

Warranted no known or reported losses as at 19th April 2022.

**Insuring Agreement Endorsements:**

Bareboat Charter Endorsement (CSR/BCE/22-1)

**Insurance Provider:**     Accelerant Specialty Insurance Company

**Loss Payee:**     Flagstar Bank, PO Box 1952, Carmel, IN 46082

**Signed:**     Tuesday April 26, 2022

For and on behalf of Participating Underwriters/Insurers

Surplus Lines Insurers are not required to file or obtain approval of policy form and rates by your local insurance department or regulatory authority.

For more information regarding Concept Special Risks Ltd, policy wordings, endorsement wordings, standard forms and frequently asked questions, please see our website www.special-risks.com.

# Commercial Yacht Insuring Agreement

## 1. Definitions

i. 'You and Your' refer to the insured named on the Declaration Page and any person who possesses any legal or beneficial interest in any corporation, trust or entity either declared as the owner of the Scheduled Vessel or as an additional assured.

ii. 'We, Us and Our' refer to the Insurers named on the Declaration Page or accompanying schedule of Insurers.

iii. 'Covered Person,' means You, and/or any person detailed on Your application form which has been submitted by You and approved by Us, provided that person has been declared to Us in writing as an operator of the Scheduled Vessel.

iv. 'Scheduled Vessel' means the vessel described on the Declaration Page, including machinery, electrical equipment, sails, masts, spars, rigging, and all other equipment normally required for the operation and maintenance of the vessel and situate on the Scheduled Vessel, which would normally be sold with the vessel. This does not include spare parts of the Scheduled Vessel, the Scheduled Vessel's life raft, tender or dinghy unless the same has been declared on the Declaration Page, nor does it include any items being stored on premises other than on-board the Scheduled Vessel.

v. 'Trailer' refers to the Scheduled Vessel's trailer, used exclusively for that purpose.

vi. Words in the singular are deemed to encompass the plural and vice versa.

vii. 'Navigational Limits' means all waters as limited and shown on the Declaration Page unless mutually agreed by Us and amended in writing.

viii. 'Salvage Charges' means those reasonable charges and expenses which are incurred by You if necessary to prevent damage, injury or loss of life or to prevent or minimise any further loss or damage covered by Coverage A, Hull, Machinery, Equipment and Dinghy of this Insuring Agreement.

ix. 'Deductible' is the first amount of any claim, which must be paid by You. If a deductible is applicable to any section of this Insuring Agreement the amount will be shown on the Declaration Page and this amount shall be deducted from the amount payable on each admissible claim.

x. 'Bodily Injury/Property Damage' means bodily injury or property damage occurring during the period of this Insuring Agreement arising from ownership and/or use of the Scheduled Vessel.

xi. 'Seaworthy' means fit for the Scheduled Vessel's intended purpose. Seaworthiness applies not only to the physical condition of the hull, but to all its parts, equipment and gear and includes the responsibility of assigning an adequate crew. For the Scheduled Vessel to be seaworthy, it and its crew must be reasonably proper and suitable for its intended use.

xii. 'Family' means any person related to You by blood, marriage, civil partnership or adoption, including wards and foster children or persons who reside in Your household.

xiii. 'Personal Property' means property purchased and owned by You, any Covered Person, any member of Your Family, provided that such property is situated on the Scheduled Vessel at the time of the loss, excluding any item that is deemed to be part of the Scheduled Vessel as defined in (iv) above.

xiv. 'Race or Speed Trial' means any event involving speed and/or of a competitive nature, including, but not limited to, Regattas and/or Rallies. 'Preparing for a race or speed trial' means any navigation of the Scheduled Vessel necessary to ensure eligibility of either You or Your vessel to participate in a race or speed trial.

xv. 'Named Windstorm' damage is damage relating to or resulting from a named or any numbered tropical weather pattern from the time the named windstorm or numbered tropical weather pattern impacts the area and until 72 hours later.

The area of the named windstorm or tropical weather pattern is an area encompassed by a circle of radius not exceeding 150 nautical miles from the path of the storm's forward travel.

xvi. 'Divers' means any person using underwater artificial breathing apparatus, and/or submersible mechanical or electrical device including, but not limited to, Submarines, Diving Bells and/or Diving Suits.

xvii. 'Operate, Operation, Operating' means to navigate or to be in physical control of or to be at the helm of the Scheduled Vessel.

xviii. 'Sinking' means when the Scheduled Vessel has sunk as far as is physically possible for the Scheduled Vessel to sink, and is totally submerged under water.

xix. 'Constructive' or 'Compromised' Total Loss means where We determine that either the reasonable cost of repairs exceed the sum insured, or where the net value being the sum insured, less the residual value of the Scheduled Vessel, is exceeded by or in Our opinion is likely to be exceeded by the reasonable cost of repairs.

xx. 'Agreed Value' means the sum insured under Section A of the Insuring Agreement Declaration Page or any endorsement to the same.

xxi. 'Combined Single Limit' (CSL) means the maximum amount We will pay towards any sum or sums that You or any other Covered Person become legally liable to pay and shall pay as a result of any one accident or occurrence arising from Your operation of the Scheduled Vessel. If the Insuring Agreement Declaration Page shows multiple liability limits, the maximum amount We will pay in total in respect of any one accident or occurrence or series of accidents or occurrences arising from a single event, is limited to the amount shown as the Combined Single Limit irrespective of the number of claims or claimants arising from the said accident, occurrence or single event and in no circumstances shall there be any aggregation of liability limits shown on the Insuring Agreement Declaration Page in excess of the Combined Single Limit hereunder.

xxii. A 'Communicable Disease' means any disease which can be transmitted by means of any substance or agent from any organism to another organism where:

   a. the substance or agent includes, but is not limited to, a virus, bacterium, parasite or other organism or any variation thereof, whether deemed living or not.

   b. the method of transmission, whether direct or indirect, includes but is not limited to, airborne transmission, bodily fluid transmission, transmission from or to any surface or object, solid, liquid or gas or between organisms.

   c. the disease, substance or agent can cause or threaten bodily injury, illness, emotional distress, damage to human health, human welfare or property damage.

xxiii. 'Sexual and/or Physical Abuse, Assault or Harassment' are defined as sexual or physical injury or abuse, including but not limited to assault and battery, negligent or deliberate touching, corporal punishment and verbal, mental or emotional abuse or harassment of any person. Sexual assault is defined as the unlawful and intentional sexual violation of another person without their consent.

## 2. Insuring Agreement

This is a legally binding insurance contract between You and Us, incorporating in full the application form signed by You. We will provide the insurance coverage described in this Insuring Agreement, in return for payment to Us of the premium due and compliance by Covered Persons with the provisions, conditions and warranties of this Insuring Agreement.

## 3. Coverage A, Hull, Machinery, Equipment and Dinghy

If a sum insured is shown for Section A of the Insuring Agreement Declaration Page, We provide coverage for accidental physical loss of or damage to the Scheduled Vessel which occurs during the period of this Insuring Agreement and within the limits set out in the Insuring Agreement Declaration Page, subject to the Insuring Agreement provisions, conditions, warranties, Deductibles and exclusions.

Reasonable expenses incurred by You in attempting to minimise or mitigate a loss incurred and covered by this Insuring Agreement will be paid by Us whether successful or not. These will be paid in addition to the sum insured under Sections A and F. Our maximum liability for these expenses is 50% of the sum insured under Section A of the Insuring Agreement Declaration Page less the Deductible shown under Sections A and F.

If a sum insured is shown for 'Non Emergency Towing' on the Insuring Agreement Declaration Page, this represents the maximum amount per incident or event and for the duration of this Insuring Agreement, that We will pay in respect of expenses incurred by You for such charges, where the Scheduled Vessel is in no immediate danger but are incurred in good faith to prevent loss or damage to the Scheduled Vessel.

We will pay salvage charges incurred by You in pursuance of 'your duties in the event of a loss' as set out in Section 10 of this Insuring Agreement, up to the limit of the sum insured under Section A of the Insuring Agreement Declaration Page less the Deductible shown under Section A.

If the Scheduled Vessel shall come into collision with any other ship or vessel and You, in consequence thereof, become legally liable to pay by way of damages to any other person or persons any amount not exceeding the agreed value of the Scheduled Vessel, We will reimburse You such amounts paid, up to the agreed value hereby insured, less the Deductible shown under Section A.

In no case shall the foregoing clause extend to cover any amount You become legally liable to pay in respect of removal of obstructions under statutory powers or for injury or damages to Harbours, Wharves, Piers, Stages and similar structures consequent on such collisions, or in respect of the cargo or engagements of the Scheduled Vessel or for loss of life or personal injury, or for loss of income, value or otherwise of any other vessel or person. In no case shall Our maximum liability exceed the sum insured hereunder.

The Deductible shown under Section A of the Insuring Agreement Declaration Page shall apply to each claim under the Insuring Agreement except for claims for actual and/or Constructive or Compromised Total Loss of the Scheduled Vessel, unless arising from a named or numbered Windstorm when the Deductible detailed below shall apply.

Loss or damage to the Scheduled Vessel arising from a named or numbered Windstorm shall be subject to a Deductible which shall apply to all claims, including actual and/or Constructive or Compromised Total Loss of the Scheduled Vessel, as shown on the Declaration Page under Section A and equal to double the Deductible as shown on the Declaration Page under Section F of the Insuring Agreement.

## Exclusions to Coverage A

Unless specifically agreed by Us in writing and additional premium charged the following losses and/or damages (whether incurred directly or indirectly) are not covered by this Insuring Agreement:

i. Loss of or damage sustained by the Scheduled Vessel whilst being transported over land (whether by trailer or other method of conveyance approved by Us in writing), more than 250 miles from the normal place of storage, as disclosed within Your application form.

ii. Losses due to wear and tear, gradual deterioration, lack of maintenance, inherent vice, weathering, insects, mould, animal and marine life.

iii. Marring, scratching or denting of the hull and/or equipment of the Scheduled Vessel.

iv. Osmosis, blistering or electrolysis.

v. Manufacturing defects or design defects, including latent defects.

vi. Un-repaired damage claims if the Scheduled Vessel is subsequently deemed by Us to be an actual or Constructive or Compromised Total Loss, during the Insuring Agreement period.

vii. Losses caused directly or indirectly by ice or freezing.

viii. Loss or damage caused intentionally by You and/or any member of Your Family.

ix. Theft of the Scheduled Vessel and/or its equipment whilst on a trailer unless the Scheduled Vessel is situate in a locked and fenced enclosure or marina and there is visible evidence of forcible entry and/or removal made by tools, explosives, electricity or chemicals.

x. Your personal expenses or those of Your Family including but not limited to the cost of Your own labour, hotel or accommodation costs, car rental and communication costs.

xi. Losses caused by delay in repairs and/or loss of use and/or enjoyment of the Scheduled Vessel and/or its equipment.

xii. Loss and/or damage to sails, sail covers, external canvases, including but not limited to Bimini Tops, arising from a named or numbered Windstorm unless properly removed and stowed.

xiii. Any loss of value of the Scheduled Vessel and/or its equipment as a result of repairs and/or replacements being effected as a result of any claim hereunder.

xiv. Damage existing prior to the inception date of this Insuring Agreement, whether You are aware of the same or otherwise.

xv. Loss or damage to the Scheduled Vessel and/or its equipment where You have abandoned the Scheduled Vessel without damage which would have resulted in a payable claim hereunder.

xvi. Loss of or damage to the Scheduled Vessel as a result of any repair yard lien being enforced, including but not restricted to the arrest or detention of the Scheduled Vessel by any repair yard.

xvii. The loss of or replacement of fuel or perishable goods that are on board the Scheduled Vessel at the time of loss.

xviii. Damage to the Scheduled Vessel's engines, mechanical and electrical parts, unless caused by an accidental external event such as collision, impact with a fixed or floating object, grounding, stranding, ingestion of foreign object, lightning strike or fire.

xix. The cost of hauling the Scheduled Vessel in anticipation of the approach of a named or numbered Windstorm.

## 4. Coverage B, Third Party Liability

If a sum insured is shown under Section B of the Insuring Agreement Declaration Page, We provide coverage for any sum or sums which You or any other Covered Person become legally liable to pay and shall pay as a result of ownership or operation of Scheduled Vessel.

We will settle or defend as We deem appropriate any claims or suits brought against You, using attorneys of Our choice where We deem necessary. Our obligation to settle or defend all third party liability claims under this Insuring Agreement ends when the amount We pay for damages, investigation costs, legal expenses and removal of wreck equals the sum insured under this section of the Insuring Agreement.

The Deductibles shown on the Insuring Agreement Declaration Page shall apply to each third party liability claim.

### Exclusions to Coverage B

Unless specifically agreed by us in writing and an additional premium paid, Liability cover is not provided for:

i. Covered Persons with regard to their liability to You, other Covered Persons, Your spouse, other members of Your Family or persons who reside in Your household.

ii. Your liability to other Covered Persons, Your spouse, other members of Your Family or persons who reside in Your household.

iii. Liability assumed by You under any contract or agreement.

iv. Liability which arises while the Scheduled Vessel is being transported on its own trailer or otherwise, except where the Scheduled Vessel is being hauled out or launched by a Covered Person.

v. Fines or penalties imposed by any Government agency.

vi. Punitive or exemplary damages however described.

vii. Liability due to pollution by any substance whether it be gradual, or sudden and accidental except as provided for in the Pollution Coverage Extension of this Insuring Agreement.

viii. Intentional acts.

ix. Bodily injury or death benefits which are required to be or are covered by any State or Federal Act or Statute or any other compensatory statute.

x. Bodily injury or death benefit to any persons employed by a Covered Person, hired as crew or not.

xi.  Liability to persons being towed, or to be towed, or having been towed in the water or in the air, from the time they commence to leave the Scheduled Vessel, until they are safely back on board, other than that provided under Coverage B, Water Activities Coverage Limitation of Liability.

xii.  Liability to or for divers operating from the Scheduled Vessel, from the time they commence to leave the Scheduled Vessel, until they are safely back on board.

xiii.  Liability to fare paying passengers or passengers carried under Charter.

xiv.  Liability for damage to any marine estuary, artificial or natural reef, living or dead coral or other marine organisms.

xv.  Loss or damage to any other vessel caused by the operation of the Scheduled Vessel in so far as the same would have been covered under Coverage A, Hull, Machinery, Equipment and Dinghy of this Insuring Agreement.

xvi.  Liabilities, medical expenses, costs, fees or any other related expense whatsoever arising out of illness or injury in any way related to or caused by exposure to the sun or the sun's rays either cumulatively or suddenly.

xvii.  Any actual or alleged loss, liability, damage, compensation, injury, sickness, disease, death, medical payment, defence cost, cost, expense or any other amount, directly or indirectly and regardless of any other cause contributing concurrently or in any sequence, originating from, caused by, arising out of, contributed to by, resulting from, or otherwise in connection with a Communicable Disease or the fear or threat (whether actual or perceived) of a Communicable Disease.

Loss, liability, damage, compensation, injury, sickness, disease, death, medical payment, defence cost, cost, expense or any other amount, includes, but is not limited to, any cost to clean-up, detoxify, remove, monitor or test for a Communicable Disease.

xviii.  Bodily Injury or Property Damage arising, directly or indirectly, out of Sexual and/or Physical Abuse, Assault or Harassment by any person whosoever, regardless of degree of culpability or intent and whether the acts are alleged to have been committed by You or any representative, officer, agent, servant or employee of You or by any other person.

Bodily Injury or Property Damage sustained by any person arising out of or resulting from any actual or alleged negligent act or omission in the employment, investigation, supervision, reporting to the proper authorities or failure to so report or retention of a person for whom You are or ever were legally responsible for, which results in Sexual and/or Physical Abuse, Assault or Harassment.

Bodily Injury or Property Damage sustained by any person arising out of or resulting from any actual or alleged negligent act or omission in the prevention or suppression of any act of Sexual and/or Physical Abuse, Assault or Harassment.

**Coverage B, Water Activities Coverage Limitation of Liability**

Whilst the Scheduled Vessel is being used for Water Skiing, Barefoot Skiing, Kneeboarding, Sit-down Hydrofoiling, Skurfing, Wakeboarding, Wakeskating, Discing and Tubing, the third party liability limits relating to these activities are reduced to:

| | |
|---|---|
| **Property damage** | US$ 10,000 |
| **Bodily Injury** | US$ 10,000 |
| **Maximum any one incident** | US$ 20,000 |

These limits shall apply from the time any person or persons begin to leave the Scheduled Vessel, or such activity commences, and will continue until the person or persons are safely back on board and such activity ceases completely. All other terms, warranties, conditions, exclusions, remain unaltered and in effect save for exclusion (xi) above.

Any amount recoverable hereunder shall form part of the maximum amount recoverable under Coverage B, Third Party Liability and within the Combined Single Limit.

## Coverage B, Extension to include Crew Liability

Subject to Our prior written agreement and Your payment of an additional premium, We may at Your request extend this Insuring Agreement to cover any sum or sums You become legally liable to pay and shall pay to hired crew resulting from injury, illness or death occurring whilst in the service of the Scheduled Vessel.

The maximum amount recoverable in respect of crew liability claims shall be the amount shown on the Insuring Agreement Declaration Page and shall form part of the maximum recoverable under Coverage B, Third Party Liability and within the Combined Single Limit. All other terms, warranties, conditions, and exclusions remain unaltered and in effect save for exclusion (ix) and exclusion (x) above.

The Deductible shown on the Insuring Agreement Declaration Page shall apply to each crew liability claim.

## Coverage B, Extension to include Commercial Passenger Liability

Subject to Our prior written agreement and Your payment of an additional premium, We may at Your request extend this Insuring Agreement to cover all sums which You become legally liable to pay and shall pay to Fare Paying Passengers or passengers carried under Charter as a result of Your ownership or operation of the Scheduled Vessel.

We will settle or defend as We deem appropriate any claims or suits brought against You using attorneys of Our choice where We deem necessary. The maximum amount recoverable in respect of Passenger Liability claims shall be the amount shown on the Insuring Agreement Declaration Page and shall form part of the maximum recoverable under Coverage B, Third Party Liability and within the Combined Single Limit.

The Deductible shown on the Insuring Agreement Declaration Page shall apply to each passenger liability claim.

All other terms, warranties, conditions, exclusions remain unaltered and in effect save for exclusion (xiii) above.

## Coverage B, Extension to include Limited Pollution Coverage

It is hereby noted and agreed that in consideration of the additional premiums charged herein and notwithstanding exclusion (vii) Coverage B, Third Party Liability, We agree to indemnify You for reasonable costs incurred by You preventing or mitigating a pollution hazard or threat thereof resulting directly from

damage to the Scheduled Vessel, where coverage is afforded under this Insuring Agreement, provided always that such pollution hazard or threat thereof:

 i. Was sudden, unintentional and unexpected by You.

 ii. That the incident commenced during the period of this Insuring Agreement.

 iii. It became known to You within 72 hours of its commencement.

 iv. Was reported to Us in writing not later than seven days after having become known to You.

 v. Was not a result of Your want of due diligence of that or Your managers, servants or agents to pre-vent or mitigate such pollution hazard to threat thereof.

These reasonable expenses must be incurred within one year from the commencement of the incident giving rise to a claim hereunder. Any amount recoverable hereunder shall form part of the maximum amount recoverable under Coverage B, Third Party Liability and within the Combined Single Limit.

## 5. Coverage C, Medical Payments

If a sum insured is shown under Section C of the Insuring Agreement Declaration Page, We will pay reason-able medical and/or funeral expenses necessary due to accidental bodily injury or death of third parties, incurred whilst boarding, leaving or on-board the Scheduled Vessel insured under this Insuring Agree-ment. These expenses must be incurred within one year from the date of the accident and will reduce any amount payable under Coverage B, Third Party Liability of this Insuring Agreement, arising from the same occurrence.

This coverage will be in excess over any other applicable insurance.

Any sum insured under this section is our maximum liability for all claims arising from any one event, regardless of the number of persons involved. Any payment made by Us under this section is not an admission of liability for You or by Us.

The Deductible shown on the Insuring Agreement Declaration Page shall apply to each claim made under this section of the Insuring Agreement.

### Exclusions to Coverage C

We do not provide medical payment coverage for:

 i. Covered Persons, their spouses, Family or other persons who reside with them. Employees of Covered Persons or anyone that is or should be covered under a State or Federal Act or Statute.

 ii. Responsibility assumed under any contract or agreement.

 iii. Anyone injured whilst the Scheduled Vessel is being transported, hauled out or launched.

 iv. Trespassers on the Scheduled Vessel.

 v. Anyone to or for whom benefits are payable under any State or Federal Workers Compensation Act including but not limited to State Workers Compensation Act, Federal Longshoreman's and Harbour Workers Compensation Act or Federal Jones Act.

## 6. Coverage D, Uninsured Boaters

If a sum insured is shown under Section D of the Insuring Agreement Declaration Page, coverage is provided in respect of sums which Covered Persons under this Insuring Agreement are legally entitled to recover from a third party vessel owner or operator, but which cannot be recovered either because they have no marine liability insurance and no realisable assets or they cannot be identified, such as a hit and run operator.

We will also pay any medical expenses incurred by Your lawful guests and invitees (including members of Your Family) as a result of any such incident giving rise to claim under this section.

The Deductible shown on the Insuring Agreement Declaration Page shall apply to each claim made under this section of the Insuring Agreement.

The sum insured in respect of this coverage is Our maximum liability for all uninsured boater claims regardless of the number of people involved and the number of claims made.

**Exclusions to Coverage D**

We do not provide coverage for:

i. Claims settled without Our prior written consent.

ii. Loss due to an uninsured vessel which is a Government vessel.

iii. Loss due to a vessel owned and/or operated by a Covered Person.

iv. Loss where no physical damage to the Scheduled Vessel exists, evidencing collision.

v. Any loss or damage otherwise recoverable under this Insuring Agreement.

vi. Bodily injury, illness or death of any Covered Person.

vii. Any loss otherwise excluded by any provision of this Insuring Agreement.

## 7. Coverage E, Trailer

If a sum insured is shown under Section E of the Insuring Agreement Declaration Page, We provide coverage for accidental physical loss of or damage to the trailer provided it is used exclusively for the transportation of the Scheduled Vessel insured under this Insuring Agreement, up to the sum insured.

Claims will be paid up to the limit of the sum insured, on the basis of the actual cost of repairing or replacing the trailer with a trailer of like kind and value. Depreciation due to age and wear and tear will be taken into account in calculating claims under this Insuring Agreement.

Reasonable expenses incurred by You in attempting to minimise or mitigate a loss covered by this Insuring Agreement will be paid by Us, whether successful or not. These will be paid in addition to the sum insured under Coverage E, Trailer without application of the Insuring Agreement Deductible. Our maximum liability for such expenses is 50% of the sum insured under Section E on the Insuring Agreement Declaration Page.

The Deductible shown on the Insuring Agreement Declaration Page shall apply to each claim under the Insuring Agreement except for claims for actual or constructive total loss of the trailer and claims for expenses incurred in attempting to avoid or minimise a loss covered by the Insuring Agreement.

A Deductible of 10% of the agreed value of the Scheduled Vessel trailer shall apply to each theft loss, including total loss of the trailer. However a Deductible of 5% of the agreed value of the trailer shall apply to each theft loss, including total loss, provided the scheduled trailer is stored in a commercial storage yard or marina that provides 24 hour security.

**Exclusions to Coverage E**

We do not provide coverage for:

i. Damages sustained by the trailer whilst the Scheduled Vessel is being transported over land, more than 250 miles from the normal place of storage, unless specifically agreed by Us in writing and an additional premium paid.

ii. Losses due to wear and tear, gradual deterioration, lack of maintenance, weathering, insects, mould, animal or marine life.

iii. Marring, scratching or denting.

iv. Manufacturing defects or design defects, including latent defects.

v. Tyre damage.

vi. Losses due to exceeding manufacturer's maximum load or speed specifications.

vii. Your personal expenses or those of Your Family including but not limited to, cost of Your own labour, hotel or accommodation costs, car rental, communication costs.

viii. Theft of the trailer unless the trailer is stolen from a locked and fenced enclosure or marina and there is visible evidence of forcible entry or removal made with tools, explosives, electricity or chemicals.

## 8. Coverage F, Personal Property

If a sum insured is shown under Section F of the Insuring Agreement Declaration Page, We will cover direct physical loss or damage to personal property from any accidental cause, whilst property is onboard, being loaded onto, or unloaded from the Scheduled Vessel. Our maximum liability in respect of all claims arising from one event is the amount of the sum insured and our maximum liability for any one item, pair or set is US$ 1,000.

Fishing gear and tackle, unless permanently affixed to the Scheduled Vessel, is deemed personal property.

Claims will be settled on the basis of actual cash value of personal property, less the Insuring Agreement Deductible and any claim made hereunder shall be adjusted in accordance with general principles of average. Where the sum insured is less than the overall actual cash value of the covered property situate on the Scheduled Vessel, We will only pay claims in the ratio that such sum insured bears to the overall cash value of the covered property situate on the Scheduled Vessel at the time of the covered loss.

**Exclusions to Coverage F**

We will not cover loss or damage to or in respect of:

i. Money, jewellery, watches, travellers cheques or any form of paper of value, furs, china, glass, silverware, antiques, art work, collectibles or computer software.

ii. Fishing gear or tackle which is permanently affixed to the Scheduled Vessel, unless the Scheduled Vessel insured hereunder shall become an actual or Constructive or Compromised Total Loss, due to a covered loss.

iii. Food and/or perishable items, including any type of fuel.

We will not cover losses due to:

i. Wear and tear, gradual deterioration, inherent vice, corrosion, damage due to changes in humidity or temperature or mechanical or electrical failure.

ii. Breakage of articles of a brittle nature unless caused by the Scheduled Vessel being stranded, sunk, burnt, on fire, or in collision or by stress of weather, burglars or thieves.

iii. Loss of water-skis or diving equipment, unless as a result of fire, or theft following forcible entry, or a total loss of the Scheduled Vessel.

iv. Theft and or damage caused by theft unless there is visible evidence of forcible entry and removal made by tools, explosives, electricity or chemicals.

## 9. General Conditions & Warranties

i. It is warranted that the Scheduled Vessel is Seaworthy at all times during the duration of this Insuring Agreement. Breach of this warranty will void this Insuring Agreement from its inception.

ii. This Insuring Agreement incorporates in full Your application for insurance and together with any endorsements issued herein, constitutes the entire contract between You and Us. At Your request, various provisions of this Insuring Agreement may be varied by Us but only by Our prior written agreement.

iii. This Insuring Agreement does not cover any loss or damage which occurs after its expiration. However, if You have been at sea in the Scheduled Vessel for at least 24 hours and this Insuring Agreement expires other than due to cancellation, You may renew or reinstate the Insuring Agreement at such time as the Scheduled Vessel arrives safely at its next port of call and for a further 24 hours, provided that You contact Us during that 24 hours and make the necessary arrangements as may be required by Us to renew or reinstate the Insuring Agreement.

iv. This Insuring Agreement may be cancelled by either You or Us at any time, subject to 10 days prior written notice. If it is cancelled by Us, We will pay You a pro rata return of premium. If it is cancelled by You, We shall pay You a short rate return of premium calculated as pro rata less 10%. However if a reduced premium has been charged in consideration of a period of lay up, or an earned premium in respect of an agreed extended voyage, the return premium will be calculated based upon the actual activity of the Scheduled Vessel, and then pro rata or short rate applied. Cancellations due to sale of the Scheduled Vessel or non-payment of premium, or non-payment of premium instalment to a premium financier are deemed cancellations by You. All policy fees are deemed earned at the inception of the policy.

v. If You sell or pledge the Scheduled Vessel or otherwise transfer ownership in part or in full, or give up possession of the Scheduled Vessel, whether actual or otherwise, this Insuring Agreement is immediately cancelled by Your action unless You have Our prior written agreement to the contrary.

vi. In the event of an actual and/or Constructive or Compromised Total Loss under this Insuring Agreement the annual premium is deemed fully earned by Us.

vii. If You have used a broker to effect coverage, it is hereby agreed that Your brokers or any substituted brokers (whether surplus line approved or otherwise), shall be deemed to be exclusively the agents of You and not of Us in any and all matters relating to, connected with or affecting this insurance. Any notice given or mailed by or on behalf of Us to the said brokers in connection with or affecting this insurance, or its cancellation, shall be deemed to have been delivered to You.

viii. We need not accept or pay for any property abandoned by You. At Our option however We are entitled to the salvage value of any property or equipment where We have settled a claim in full under this Insuring Agreement, in respect of such property or equipment.

ix. It is warranted that Covered Persons must at all times comply with all laws and regulations, governing the use and or operation of the Scheduled Vessel. We shall not be deemed to provide cover or shall We be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose Us to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of the European Union, United Kingdom or United States of America.

x. If the Scheduled Vessel is fitted with fire extinguishing equipment, then it is warranted that:

   a. All fire extinguishing equipment is properly installed and is maintained in good working order.

   b. All fire extinguishing equipment is tagged and certified annually or in accordance with the manufacturer's recommendations, whichever is more frequent.

   c. The tanks of such equipment are weighed annually or in accordance with the manufacturer's recommendations, whichever is more frequent.

   d. The tanks are recharged as necessary.

   For purposes of complying with this warranty, all installation, maintenance, certification, tagging, weighing, and recharging must be conducted by a duly licensed and qualified individual whose principal business is the installation, maintenance, certification, tagging, weighing, and recharging of such systems. Such individual may not be the insured, a Covered Person or any named operator, unless expressly approved by us in writing.

xi. If You give up Your rights or Our rights to recover damages from anyone who may be liable to You, denying Us the benefit of the right of recovery, payment of any admissible loss under this Insuring Agreement shall be reduced by the amount We have been denied.

xii. This contract is null and void in the event of non-disclosure or misrepresentation of a fact or circumstances material to Our acceptance or continuance of this insurance. No action or inaction by Us shall be deemed a waiver of this provision.

xiii. We will not pay for any loss resulting from:

   a. radioactive contamination, or nuclear reaction

   b. pollution or contamination by any substance (other than to the extent provided for under Coverage B, Extension to Include Limited Pollution Coverage)

    c. war declared or not, civil war, insurrection, rebellion, revolution or the consequences of any of these

    d. capture, seizure, arrest, restraint, terrorism or detainment by any government power or authority, lawful or otherwise.

xiv. If We take steps to protect damaged or endangered property, this does not constitute acceptance of abandonment of that property by Us or acceptance of any claim as may be covered hereunder.

xv. If any Covered Person has other insurance against risks covered by this Insuring Agreement, then this insurance shall be in excess over all other valid and collectible insurances.

xvi. Unless We specifically agree in writing and the appropriate endorsement is issued, this insurance does not cover loss or liability incurred during a race or speed trial or during preparation for a race or speed trial.

xvii. Unless We agree in writing to the contrary, if We request a survey of the Scheduled Vessel then it is warranted that such survey is in existence prior to the effective date of this insurance and a copy of the same must be received by Us within 30 days of the effective date of this Insuring Agreement. If the survey makes any recommendations with respect to the Scheduled Vessel, then it is warranted that all such recommendations are completed prior to any loss giving rise to any claim hereunder, by skilled professionals using fit and proper materials and that either:

    a. The surveyor who carried out the survey certifies in writing that all recommendations have been completed to their (the surveyor's) satisfaction prior to any loss and/or claim.

Or,

    b. The professionals/repair yard that carried out the said work and/or recommendations certifies in writing that all recommendations have been completed prior to any loss and/or claim. Failure to comply with this warranty will void this Insuring Agreement from inception.

xviii. No suit or action on this Insuring Agreement for the recovery of any claim shall be sustainable in any court of law or equity unless the Assured shall have fully complied with all the requirements of this Insuring Agreement, nor unless commenced within one (1) year from the date of the happening or the occurrence out of which the claim arose, provided that where such limitation of time is prohibited by the laws of the state wherein this Insuring Agreement is issued, then, and in that event, no suit or action under this Insuring Agreement shall be sustainable unless commenced within the shortest limitations permitted under the laws of such State.

xix. Where any term herein is referred to as a 'warranty' or where any reference is made herein to the word 'warranted', the term shall be deemed a warranty and regardless of whether the same expressly provides that any breach will void this Insuring Agreement from inception, it is hereby agreed that any such breach will void this Insuring Agreement from inception.

xx. Where a lay-up 'laid up period' has been specified within the Declaration Page, it is warranted that the Scheduled Vessel will not be used, navigated or utilised, in any manner whatsoever, during the dates so specified. 'Use' includes, but is not restricted to, living on board the Scheduled Vessel.

xxi. The Scheduled Vessel shall be valued at the agreed valuation shown on the Declaration Page or on any endorsement thereto issued by Us. However the following items are subject to payment on the basis of depreciated cash value less the applicable Deductible. Depreciated cash value means replacement cost less the annual percentage factor of depreciation shown as follows:

   a. Internal and/or external paints, finishes, gelcoat or other covering — 10% per annum.

   b. Bottom paint including but not limited to anti-foul or barrier coat finishes — 50% per annum.

   c. Sails, standing and running rigging — 12.5% per annum.

   d. Internal and/or external protective covers, canvas, vinyl and other materials and their frames — 20% per annum.

   e. Internal and/or external upholstery, fabrics, wall coverings, carpets and rugs — 10% per annum.

   f. Machinery including but not limited to engines, generators, water makers and waste systems — 7% per annum.

   g. Outboard Motors — 20% per annum.

   h. Outdrives, propellers, shafts, rudders, struts, couplings, trim tabs, stabilisers — 20% per annum.

   i. Batteries and solar charging panels — 20% per annum.

   j. Electrical equipment including but not limited to internal and external appliances, navigational aids, depth sounders, winches, pump motors and electric deck gear — 10% per annum.

   k. Mast and spars — 5% per annum.

   l. Stanchions and lifelines — 10% per annum.

   m. Inflatable tenders, dinghies or life rafts — 12.5% per annum.

   n. Hard FRP, composites, aluminium or wood tenders, dinghies or life rafts — 10% per annum.

The cost of dry docking and/or lay-days shall be adjusted in accordance with the required time to complete the repair of covered losses.

However in no event shall the depreciation value be less than 20% of the replacement cost. Reasonable labour costs to repair or replace the damaged items following a recoverable claim shall be payable in full subject always to the applicable Deductible.

If the hull is made in whole or in part of plywood, fibreglass, metal or other material of similar nature its repair shall be made by applying suitable patches to the damaged hull area in accordance with generally accepted good repair practice. This Insuring Agreement does not cover the cost or expense of painting or impregnating colour beyond the immediate damaged area or areas.

xxii.  We have the right to either pay You the reasonable costs of repairs of Your vessel or We will declare Your vessel a Constructive or Compromised Total Loss. Where We have paid the agreed value of Your vessel to You as a result of Our declaring the Scheduled Vessel a Constructive or Compromised Total Loss, You will, at Our request, transfer title to the Scheduled Vessel either to Us or to Our designated or named nominee. We will provide You with the option to retain title to the Scheduled Vessel should You match or better the highest bid to purchase the Scheduled Vessel that We receive. We may offset any claim payment due to You against such sum due should You retain title to the Scheduled Vessel in accordance with the above.

xxiii.  It is warranted that the Scheduled Vessel will be operated only by Covered Persons. However, in the event of an incident occurring when the Scheduled Vessel is being operated by any person other than a Covered Person, that may give rise to a claim under this Insuring Agreement, You have a period of seven days following such an incident to submit details of the operator for retroactive approval by Us.

xxiv.  Where You are entitled to limit Your liability to third parties the maximum recoverable under Coverage B, Third Party Liability herein, is the amount You become legally liable to pay or the limit of coverage shown under Coverage B, Third Party Liability of the Insuring Agreement Declaration Page, whichever is the lesser amount.

xxv.  Where two or more Insurers subscribe to this insurance their obligations are several and not joint and are limited solely to the extent of their individual subscriptions. The Insurers in such circumstances are not responsible for the subscription of any co-subscribing insurer who for any reason does not satisfy all or part of its obligations hereunder.

xxvi.  It is warranted that all participants will sign a release of liability, regardless of whether they are paying or complimentary, prior to the commencement of any charter activity, unless otherwise agreed by Us and that any person who does not sign or refuses to sign this release shall not be permitted to participate in any activity.

xxvii.  In no case shall this Insuring Agreement cover loss, damage, liability or expense directly or indirectly caused by or contributed to by or arising from:

  a.  The failure, error or malfunction of any computer, computer system, computer software programme, code, or process or any other electronic system.

Or,

  b.  The use or operation, as a means for inflicting harm, of any computer, computer system, computer software programme, malicious code, computer virus or process or any other electronic system.

## 10. Your Duties In The Event Of A Loss

1.  Immediately take all possible steps to minimise the loss and protect the Scheduled Vessel from further loss. Failure to do so may invalidate Your insurance coverage or reduce the amount of any claim hereunder.

2.  Within 30 days of a loss giving rise to any claim hereunder give Us written notification of the loss and its circumstances, this term is a condition precedent to our liability hereunder.

3.  Comply with any reasonable request made of You, by Us with regard to the loss.

4. Advise the Police, Coast Guard, or any appropriate authority of the loss and its circumstances.

5. Give Us an opportunity to examine the damaged property before it is repaired or discarded.

6. Submit a claim form and/or statement describing the loss, together with two estimates of repair cost and/or records to substantiate the amount of the loss.

7. Neither assume obligation, nor admit liability without Our written permission to do so.

8. Immediately forward to Us any legal papers or notices received in connection with the loss.

9. Cooperate with Us in the investigation, defence or settlement of any loss and agree to be examined under oath if We so request.

10. Allow examination by physicians of Our choice.

11. Assist Us in obtaining copies of medical records and reports.

12. Give Us a notarised statement or statutory declaration if We so request.

13. Give Us a proof of loss and discharge of liability once the amount of the claim under this Insuring Agreement has been agreed with You.

14. Preserve any right of recovery from others. When We pay a loss, Your right to recover becomes Ours up to the amount of Our payment together with any legal fees and expenses. You must also co-operate with Us to recover the losses We may pay. Any amounts recovered from others belong to Us up to the amount of Our payment together with any legal fees and expenses.

## 11. Service Of Suit, Choice Of Law And Forum

**It is hereby agreed that any dispute or claim arising hereunder (including non‑contractual disputes or claims), or in connection with this Insuring Agreement, shall be adjudicated according to well established, entrenched principles and precedents of substantive United States Federal Admiralty law and practice but where no such well established, entrenched precedent exists, any dispute or claim arising hereunder (including non‑contractual disputes or claims), or in connection with this Insuring Agreement, is subject to the substantive laws of the State of New York.**

It is also hereby agreed that any dispute arising hereunder shall be subject to the exclusive jurisdiction of the Federal courts of the United States of America, in particular, the Federal District court within which You the Assured resides or the Federal District court within which your insurance agent resides.

It is further agreed that:

i. the Assured may serve process upon any senior partner in the firm of:

Rubin, Fiorella, Friedman & Mercante LLP
630 Third Avenue, 3rd Floor
New York, New York 10017

and that in any suit instituted against any one of them upon this contract the Underwriters will abide by the final decision of the Court or any Appellate Court in the event of an appeal.

ii.  The above named are authorised and directed to accept service of process on behalf of Underwriters in all such suits and/or upon request of the Assured to give written undertaking to the Assured that they will enter a general appearance upon the Underwriters behalf in the event such a suit shall be instituted.

iii. Further, pursuant to any Statute of any State, Territory or District of the United States of America which makes provision therefore, Underwriters hereby designate the Superintendent, Commissioner or Directors of Insurance or any other officer specified for that purpose in the statute, or his successor or successors in office (The Officer) as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Assured or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the above named as the person to whom the Officer is authorised to mail such process or true copy thereof.

This wording is the property of Concept Special Risks Ltd and may not be reproduced wholly or in part by any means whatsoever without the express written permission of Concept Special Risks Ltd. Concept Special Risks Ltd will seek legal redress from any person or persons found to have infringed their copyright

# Bareboat Charter Endorsement

It is hereby noted and agreed that coverage is extended for the Scheduled Vessel to be used for Bareboat Charter. A Renter of the Scheduled Vessel is deemed a Covered Person as per the Insuring Agreement and provided always that:

1. When underway, the Scheduled Vessel is under the command of a competent person who holds all appropriate qualifications required by any applicable regulations and as detailed within the Bareboat Charter Supplementary Sheet which will be incorporated in its entirety into any relevant policy of insurance where Insurers have relied upon the information contained therein.

2. Payments for the Charter to be made by credit card and/or bank transfer and/or cheque with bank details recorded of the Charterer.

In the event of cash payments made directly between the Charterer and Assured, a deposit by Credit Card should be made with a copy of the Passport and/or Driving License and/or Identity Card retained.

The Assured and/or the Manager detailed on the Declaration Page of the Insuring Agreement shall be responsible for verifying the qualifications, experience and suitability of the Charterer and to properly instruct them on the handling of the Scheduled Vessel including but not limited to the use of the "Emergency Manual" before handing the Scheduled Vessel over to the Charterer.

Those Charterers approved as above by the Assured and/or Manager as suitable shall be deemed Covered Persons as defined under the Insuring Agreement.

The Insuring Agreement is also extended to cover the risk of embezzlement of the Scheduled Vessel by the Charterer provided the Charter operator has obtained third party reference on the identity and the current address of the person signing the Charter party agreement by means other than a copy of the Passport or Driving License.

This Insuring Agreement is further extended to include coverage of the Assured (You), provided You are not in charge of the Scheduled Vessel at the time, for loss or damage to the Scheduled Vessel and reasonable legal fees or reasonable expenses incurred in obtaining the release of the Scheduled Vessel following impounding, arrest, detention, confiscation or any like act by any government or legally appointed authority of same as a result of any act (whether it be legal or otherwise) committed by a Charterer and/or Captain and/or Crew Member and committed without Your consent, knowledge or approval. The above Insuring Agreement is also hereby amended to include coverage in the event of a Breach of Warranty by the Charterer and/or Captain and/or Crew Member, whether intentional or otherwise, and in the event, is to cover loss of and/or damage to the Scheduled Vessel as a result thereof or during such Breach of Warranty provided such Breach of Warranty is committed without Your consent, knowledge or approval.

Unless specifically agreed by Insurers in writing such agreements may only be made for the purposes of recreational Charter to individuals and not to other Charter companies or commercial organisations.

In no event will the limit of the coverages stated above exceed the amount shown on the Declaration Page and nothing set forth herein will in any way otherwise alter, amend or modify the terms of the above Insuring Agreement.

**ALL OTHER TERMS, CLAUSES AND CONDITIONS REMAIN UNALTERED.**



# Claims Guidance

This company is incorporated and operates under the laws of the United Kingdom. We are based in Guiseley, West Yorkshire, within the United Kingdom and act as Underwriting Agents for the Insurers. We were formerly T L Dallas (Special Risks) Ltd. but changed our name in May 2008 to Osprey Special Risks Limited and subsequently to Concept Special Risks Limited in 2013. All of our contact details remain the same as before and the company enjoys the same excellent reputation throughout the Insurance market. Full details can be obtained by clicking on our web site or searching the records at Companies House Cardiff, United Kingdom.

### When my vessel is repaired will I receive all the repair costs less my deductible?

We will place your vessel in the same condition it was in before your loss, in so far as it is possible. What this means is that we will apply depreciation to costs that have been agreed as fair and reasonable. The way and manner we apply depreciation is set out within the insuring agreement. This policy is not new for old and this is the reason that we apply depreciation.

### What is my deductible?

This is shown on your policy declaration page (headed "Cover Note") next to each heading of coverage afforded. This is the first amount of each claim that you must meet. To have a valid claim you must evidence that your repair costs exceed the deductible. If your vessel is damaged by a named windstorm then the amount of this deductible will be doubled. Different deductibles also apply to theft losses.

### What is 'Salvage'?

Salvage charges are defined by the insuring agreement as those reasonable charges and expenses that you incur "with our permission and consent" to prevent further loss and or damage to your vessel. We will pay these charges after application of your deductible.

### What is the difference then between 'Salvage charges' and 'Sue and Labor'?

One is incurred with our knowledge and consent; the other is as a result of steps taken by you without our knowledge and consent. Salvage will refer to an express agreement with a third party to "salve" your vessel. We are generally in a better position to agree terms with professional salvors than you are. If you are unable to reach us, then be wary of accepting terms from salvors that are simply presented to you in the form of their written form of salvage agreement. Do not sign this agreement unless you are certain that you understand what it means and that the charges being made are fair and reasonable. If the salvor refuses to assist you unless you sign then make sure that you record the agreement as having being "executed under protest".

### Can anyone else apart from me and my spouse operate my vessel?

Only if we have agreed to this. This is a named operator only policy. In order to cover any operator we require full details of their boating experience, loss record and details of any violation/suspension including auto within the last five years. Please contact endorse@specialrisks.co.uk.

### What is a lay-up period?

This is the period of time within which it has been agreed that a vessel will not be operated in any manner whatsoever. We will either agree to a lay-up of your vessel afloat or on land. In exchange for this, you may receive a reduced premium. In the event that you do operate your vessel during this period you will not be covered for any losses or damage.

### What does miles offshore mean?

Where we have advised a miles offshore limit this mean that this is the farthest your vessel must be from land (within your defined navigation limits). For example: Lake Michigan only — not to exceed 15 miles offshore.

### Am I covered for losses I sustain as a result of me not being able to use the vessel during the repair process?

No. This type of loss is specifically excluded.

### Will Insurers arrange repairs or recovery in the event of a loss?

This is an indemnity policy which means that the insured makes the repair and recovery arrangements and Insurers will refund the agreed amount. However, it may be possible to arrange advance payments to repairers in the event of a major loss but this is entirely at our discretion.

### What if I sell my vessel during the policy period?

This automatically cancels your policy immediately unless you have our agreement to the contrary. You should tell us if you are selling your vessel and upon what date ownership will pass. You will receive an appropriate short rate return of premium. **You cannot transfer your insurance with title to your vessel.**

### What must I do during the duration of the policy period?

You must properly maintain your vessel **at all times** throughout the term of your policy and ensure that it is seaworthy. This is very important because if it is subsequently determined that your vessel has not been maintained in a seaworthy state then your entire policy may be prejudiced and not just the particular claim. A marine surveyor can help you with this and advise you whether your vessel is seaworthy. Make sure your surveyor is a member of an organisation such as the Society of Marine Surveyors "SAMS" or some other recognised body. You must also comply with any regulations covering the use of your vessel i.e. the Coastguard. You must obey any law relating to the use and ownership of your vessel. You must not use your vessel for any illegal or unlawful activity and you must not allow others to do so either. You must not operate your vessel whilst under the influence of alcohol or drugs.

### Is my engine covered and other mechanical and electrical items?

You have to show that the damage was sustained as a result of some accident and or fortuity that befell you as a result of the operation and or management of your vessel. Engines especially do not last forever and sooner or later will require attention. This is part of general maintenance. This policy will not cover you for normal wear and tear.

### What happens if I take my vessel outside of the navigational limits?

You have already agreed that you will only operate your vessel within a strict area. If you break that agreement we will not pay for any losses that you sustain. Ensure that you properly understand where you can operate and where you may not operate your vessel.

### Can I charge guests for taking them on a trip?

Only if we have agreed to this, additional premium has been paid and a commercial policy has been issued.

### Treating Customers Fairly Policy Statement

We are committed to treating customers fairly as a matter of good business and fair dealing. To achieve this, we give the following undertakings:

- We will take all reasonable steps to only do business professional intermediaries who are licensed by their local governmental authority to arrange insurance.

- We will ensure that all intermediaries that we do business with are provided with clear and full descriptions of the coverage we offer.

- Our policy documentation will be in accordance with market & regulatory standards.

- We will ensure that all claims are handled promptly and in accordance with the terms of the policy.

- We will only employ competent staff and will ensure that they are properly trained to carry out their jobs.

If for any reason, you feel that we have failed to meet the high standards that we have set ourselves, we would like to know and would encourage you to follow the complaints procedure set out below.

- Firstly, contact us in writing with the relevant department.

- Within 5 business days of receipt by us we should have sent you a written acknowledgement advising you of the person who will be dealing with your concerns.

- Within 20 business days we will provide you or you with a written response unless the matter is sufficiently complicated to require further investigation, in which case we will advise you of this in writing, with an explanation of why we cannot yet make a determination. We will also advise you of when you may expect our final response.

None of the above procedure in any way affects your right to legal advice or assistance or to seek assistance from your local insurance regulator.

## What to do in the event of an incident

In the event of a Loss giving rise to damage to your vessel, time is of the essence, please immediately advise our Claims Department by email to [claim@special-risks.co.uk](mailto:claim@special-risks.co.uk) in the first instance. Under the policy you must report the incident within 30 days. The following is intended for general guidance only in the event of a claim and is not intended as an exhaustive, final definition of coverage. Whether coverage is in force or not depends on the individual circumstances and facts surrounding each claim.

### The Policy

The policy of marine insurance that has been issued to you is known as an "all risks" form of marine insurance policy. This covers you for any loss and or damage to your vessel that is accidental, fortuitous in nature and is incidental to the use of your vessel. **However, not all types of damage and or losses are covered.** The policy excludes some types of damage and incident and you should take time to study these carefully and understand how each exclusion could affect your coverage.

The policy exclusions are set out within the insuring agreement wording under the heading "exclusions to coverage A, B, C, D, E and F". The insuring agreement wording also contains general conditions and warranties that you should be familiar with, which if breached by you could affect coverage. You can obtain a copy of this form of policy from the Policy Wordings section on our website. If you believe that you may have a claim under your policy above all else, do not delay in the proper presentation of your claim.

### Steps to be taken in the event of a loss

1. Notify us in writing that you have had an incident that may give rise to a claim under your policy.

2. Obtain a claim form for completion. Fully complete this form and submit it to us. If you are unable to obtain a claims form, explain fully in writing exactly what has happened and send this document.

Section 10 of the insuring agreement sets out what you should do in the event of loss of and or damage to your vessel (see "Your Duties in the event of a loss"). Please follow these steps, as any failure by you to do so could delay the processing of your claim and in some cases prevent a recovery.

All that is expected of you is that you act reasonably to preserve your vessel and its equipment from further damage. Consider what steps you would take if you didn't have insurance.

Once you have informed us of your claim, place a note in your diary and follow this up with you us if no one has contacted you within 7 days.

We may appoint a surveyor, who will arrange for the damage to your vessel to be inspected and who will then send a report to us as to the extent of the damage. The appointment of a surveyor is at our discretion and not every incident will require this. You are at liberty to appoint your own representative; however the costs of such representation may be disallowed. As not every incident will require a surveyor, it is very important that you do not simply wait for one to call you.

Try to obtain at least two repair estimates for the damage to your vessel and send these to us as soon as they are available. You do not need our permission to begin repairs to your vessel; all you have to do is allow us a reasonable opportunity to assess the damage to your vessel.

If you delay in telling us about the loss, or carry out repairs to the vessel without giving us the opportunity to look at them first, this may affect your coverage.

## The Adjusting Process

When a surveyor is appointed the cost of their fees rests with Insurers whether or not your claim is covered. The surveyor will examine the damage to your vessel that you tell us occurred as a result of the incident in question. They will produce a written report and send that to us. Because we pay the adjuster, the report remains our property and while we may release it at our discretion, we are not obliged to. The surveyor may sometimes give you guidance and assistance on your claim. You can appoint your own representative at any time to assist you to reach a settlement but as we have noted elsewhere, the cost of such representation will not always be allowed.

## The Decision

Once the surveyor has reported to us, we are usually in a position to provide a rapid decision on your claim. Once the repair estimates have been approved by us as fair and reasonable, we will make an offer to you to settle your claim. If you agree to our offer we will always ask you to sign a release document, which you should do in the presence of an attorney or Notary Public. Carefully read this document because once you have signed it we will only accept a further claim for the same incident in very exceptional circumstances.

If you are at all unhappy with the decision or any part of the claims process, please contact us to discuss your queries. If you still feel unhappy, then please write to use at the address provided.

The Insurers are under no obligation to repair your vessel and in certain circumstances, to repair your vessel will not be economically viable and we will then declare your vessel "a constructive total loss". When we do this you will be paid in full the agreed value of the vessel as it appears on your policy schedule and or any subsequent endorsement. No deductible will be applied normally except where the loss and or damage was caused by a named windstorm or theft. You will normally be given the option of retaining title to your vessel. Your Insurers have the option to take title to your vessel but you must appreciate that they are not under any obligation to do so and responsibility for the vessel remains with you unless you are told anything to the contrary. If your vessel is sold to a third party after it has been declared a constructive total loss you may be required to execute a bill of sale.

## Payment of the Claim

Once you have returned the release document to us, we will usually send you your funds within 30 days of receipt. We can pay you by way of cheque/draft or fund transfer. If you require a fund transfer please provide us with the following:

    i.  Your Full Name

    ii.  Your Postal Address

    iii.  Bank Full Name

    iv.  Bank Address

    v.  ABA/ Routing Number or SWIFT Code

    vi.  Name on Account

    vii.  Account Number

If your bank is not in the USA, please provide details of your bank's US correspondent bank:

    i.   US Correspondent Bank Name

    ii.  US Correspondent Bank Address

A fund transfer usually takes three to four days to effect. We will do our best to pay you before the expiration of 30 days from the day we receive the release, but please be patient.

If you have nominated a loss payee or have more than one assured name listed on your application form we can only process payment by way of cheque. This cheque will be made out in your name and/or the name of the loss payee/additional assured.

At this or any stage, please feel free to telephone, or e-mail our claims department with any query that you might have. Above all we want you to enjoy many hours of safe, trouble free operation of your vessel, but we know that accidents do happen and that's what we are here for. We will assist and advise so far as we are able to.





# Treating Customers Fairly

We are committed to treating customers fairly as a matter of good business and fair dealing. To achieve this, we give the following undertakings:

- We will take all reasonable steps to only do business with brokers and professional intermediaries who are licensed by their local governmental authority to arrange insurance.

- We will ensure that all intermediaries that we do business with are provided with clear and full descriptions of the coverage we offer.

- Our policy documentation will be in accordance with market and regulatory standards.

- We will ensure that all claims are handled promptly and in accordance with the terms of the policy.

- We will only employ competent staff and will ensure that they are properly trained to carry out their jobs.

*CSR/TCF/19-1*

**Concept Special Risks Ltd**
+44 (0) 1943 882 700 · www.special-risks.com
Unity House · 2 Station Court · Station Road · Guiseley · LEEDS · LS20 8EY · United Kingdom



# Privacy and Data Protection

## Overview

Concept Special Risks Limited takes the privacy of your personal data very seriously and will only use data in accordance with the General Data Protection Regulation (GDPR) 2018. This Privacy and Data Protection Statement outlines the personal data we collect about you both on our website and during the process of delivering insurance services to you.

By using our website or by requesting insurance services from us, you consent to us collecting and using personal data about you as specified below in accordance with this Statement. Any changes made to these terms will be posted on our website so that you are always kept informed about the collection and use of your personal data.

This Statement will inform you of the following:

- What personal data is collected from you by us.

- The ways that we share your data in order to provide you with insurance services.

- What choices are available to you regarding the use of your personal data.

- The security procedures in place to protect the misuse of your personal data.

- How you can exercise your rights under GDPR in relation to your personal data.

## Data Usage

### Data Collected

We only collect and have access to data that you voluntarily give us via email or other direct contact from you. Data provided about you via an insurance broker or other third party will be considered to have been provided by you in good faith.

This may be provided by you in the form of a website contact form, an email from your or your insurance broker, a written application form or other form of written correspondence or verbal communication initiated by you or your broker.

We will not sell or rent this data to anyone and we do not use tracking cookies on our website to secure other data about you without your knowledge.

## Data Use

We will use your data to correspond with you regarding the reason you contacted us. We will not share your data with any third party, other than as necessary to fulfil your request. If your request was to amend or enquire about any insurance service provided by us we will use your data specifically to administer this service.

We will not contact you in the future to tell you about new products, services or changes to this Statement.

## Data Sharing

We will only share your personal data with third parties used in order to fulfil our obligations in the provision of insurance services. Examples of such organisations are insurance and reinsurance carriers, your insurance broker, claims adjusters and claims service providers.

## Data Usage Table

The following table is a summary of how we use your data, who we disclose that data to and for what purposes:

### Financial Data

| | |
|---|---|
| **Type of Data Processed** | Financial data such as bank account details and premium data. |
| **Data Provider** | You, your broker, another party acting on your behalf. |
| **Data Disclosed To** | We do not disclose this data to third parties. |
| **Purpose of Processing** | Payment of insurance premiums and claims. |
| **Lawful Basis for Processing** | Performance of our contract with you and to fulfil our legal obligation. |

### Statutory and Anti-Fraud Data

| | |
|---|---|
| **Type of Data Processed** | Sanctions data and anti-fraud checking |
| **Data Provider** | You, your broker, another party acting on your behalf, insurers and reinsurers. |
| **Data Disclosed To** | Sanctions checking databases, anti-fraud databases, insurers, reinsurers and your broker. |
| **Purpose of Processing** | To ensure we meet our obligation to avoid fraud and financial crime. |
| **Lawful Basis for Processing** | Performance of our contract with you and to fulfil our legal obligation. |

**Claims Data**

| | |
|---|---|
| **Type of Data Processed** | Data about previous and current claims. |
| **Data Provider** | Anti-fraud databases, claimants, defendants, witnesses, experts including medical experts, loss adjustors, solicitors and claims handlers. |
| **Data Disclosed To** | Sanctions checking databases, anti-fraud databases, insurers, reinsurers and your broker. |
| **Purpose of Processing** | To ensure we meet our obligation to avoid fraud and financial crime. |
| **Lawful Basis for Processing** | Performance of our contract with you and to fulfil our legal obligation. |

**Individual Data**

| | |
|---|---|
| **Type of Data Processed** | Data about you disclosed within your application for insurance or provided by you to us via other means. |
| **Data Provider** | You, your broker, another party acting on your behalf. |
| **Data Disclosed To** | Sanctions checking databases, anti-fraud databases, insurers, reinsurers, your broker. |
| **Purpose of Processing** | Setting you up or managing you as a client, evaluating and pricing the risks to be insured and validating any appropriate premium. |
| **Lawful Basis for Processing** | Your consent, provided to us by completing appropriate documentation that you send to us. |

## Data Access and Control

### Your Access to and Control Over Data

We will not make unsolicited contact with you as a result of your use of our website or other contact with us. We will only contact you as a result of your contact with us either directly or through an insurance broker, in order to respond to your enquiry or to administer any insurance product that you hold with us.

We do not make your personal data publicly available.

The GDPR grants you a number of rights in relation to your personal data, these rights may be exercised by contacting our Data Controller or Data Protection Officer on the below postal address or via email at it@special-risks.co.uk.

Concept Special Risks Ltd
Unity House
2 Station Court
Station Road
Guiseley
Leeds
England
LS20 8EY

The Data Controller or Data Protection Officer will make a determination regarding whether your request is permissible under the GDPR taking into account your rights and our rights respectively. A summary of your rights is outlined below:

- You have the right to know what personal data we hold related to you, how we store it and with whom we share it. You may request a copy of this personal data.

- You have the right to request rectification and correction of inaccurate or incomplete personal data held by us about you.

- You have the right to request the erasure of your personal data.

- You have the right to express your concern with the way we use, process and store your personal data.

- You have the right to request that we restrict the processing of your personal data; we are able to retain enough of your personal data to be sure that we respect this request in the future.

- You have the right to request personal data portability, which is to request that we provide a portable copy of your personal data either to you or another party.

We are obliged to respond to you within one calendar month in relation to your request, where more complex requests are concerned we may be entitled to respond within two calendar months. In most cases if we are able to provide your data to you, we are obliged to do so free of charge, although there are exceptions to this, such as where you request is repetitive or you request copies.

If you have any concerns regarding the way we use your data and the way we store it you should initially contact us and if you do not believe our response is satisfactory you should contact the Information Commissioner's Office. A range of contact options may be found by [clicking here](#) and their postal address is:

> The Information Commissioner
> Wycliffe House
> Water Lane
> Wilmslow
> Cheshire
> England
> SK9 5AF

## Automatic Decision Making

We do not use any technology that seeks to make automatic decisions about your insurance risk, we have a team of trained underwriters, claims handlers and accounts assistants that will manage your account with us on a case by case basis.

## Data Retention

We will retain you information as long as we are legally required to as a minimum.

## Security

We take precautions to protect your information. When you submit sensitive information through our website or to us on email, your information is protected both online and offline. Wherever we collect sens-

itive information that information is encrypted and transmitted to us in a secure way. You can verify this by looking for a closed lock icon displayed on your web browser, or looking for "https" at the beginning of the address of the web page.

While we use encryption to protect sensitive information transmitted online, we also protect your information offline. Only employees who need the information to perform a specific job (for example, billing or customer service) are granted access to personally identifiable information. The computers/servers in which we store personally identifiable information are kept in a secure environment.

## Cookies

We do not use "cookies" on our website.

## Links

Our website contains links to other websites. Please be aware that we are not responsible for the content or privacy practices of other websites. We encourage our users to be aware when they leave our site and to read the privacy statements of any other site that collects personally identifiable information.

## Updates

Our Privacy Policy may change from time to time and all updates will be posted on our website privacy page. We will not contact you to notify you of any changes to this Privacy Statement.

If you feel that we are not abiding by this privacy policy, you should contact us immediately via telephone at +44 (0) 1943 822700 or it@special-risks.co.uk.



# Bareboat Charter Endorsement

It is hereby noted and agreed that coverage is extended for the Scheduled Vessel to be used for Bareboat Charter. A Renter of the Scheduled Vessel is deemed a Covered Person as per the Insuring Agreement and provided always that:

1. When underway, the Scheduled Vessel is under the command of a competent person who holds all appropriate qualifications required by any applicable regulations and as detailed within the Bareboat Charter Supplementary Sheet which will be incorporated in its entirety into any relevant policy of insurance where Insurers have relied upon the information contained therein.

2. Payments for the Charter to be made by credit card and/or bank transfer and/or cheque with bank details recorded of the Charterer.

In the event of cash payments made directly between the Charterer and Assured, a deposit by Credit Card should be made with a copy of the Passport and/or Driving License and/or Identity Card retained.

The Assured and/or the Manager detailed on the Declaration Page of the Insuring Agreement shall be responsible for verifying the qualifications, experience and suitability of the Charterer and to properly instruct them on the handling of the Scheduled Vessel including but not limited to the use of the "Emergency Manual" before handing the Scheduled Vessel over to the Charterer.

Those Charterers approved as above by the Assured and/or Manager as suitable shall be deemed Covered Persons as defined under the Insuring Agreement.

The Insuring Agreement is also extended to cover the risk of embezzlement of the Scheduled Vessel by the Charterer provided the Charter operator has obtained third party reference on the identity and the current address of the person signing the Charter party agreement by means other than a copy of the Passport or Driving License.

This Insuring Agreement is further extended to include coverage of the Assured (You), provided You are not in charge of the Scheduled Vessel at the time, for loss or damage to the Scheduled Vessel and reasonable legal fees or reasonable expenses incurred in obtaining the release of the Scheduled Vessel following impounding, arrest, detention, confiscation or any like act by any government or legally appointed authority of same as a result of any act (whether it be legal or otherwise) committed by a Charterer and/or Captain and/or Crew Member and committed without Your consent, knowledge or approval. The above Insuring Agreement is also hereby amended to include coverage in the event of a Breach of Warranty by the Charterer and/or Captain and/or Crew Member, whether intentional or otherwise, and in the event, is to cover loss of and/or damage to the Scheduled Vessel as a result thereof or during such Breach of Warranty provided such Breach of Warranty is committed without Your consent, knowledge or approval.

Unless specifically agreed by Insurers in writing such agreements may only be made for the purposes of recreational Charter to individuals and not to other Charter companies or commercial organisations.

In no event will the limit of the coverages stated above exceed the amount shown on the Declaration Page and nothing set forth herein will in any way otherwise alter, amend or modify the terms of the above Insuring Agreement.

**ALL OTHER TERMS, CLAUSES AND CONDITIONS REMAIN UNALTERED.**



# Policy Endorsement

| | |
|---|---|
| **Declaration Number:** | CSRYP/212464 |
| | This endorsement attaches to and forms part of the policy. |
| **Endorsement:** | 1 |
| **Assured:** | Theresa Tran dba Chicago AquaLeisure, LLC |
| **Assured's Address:** | PO Box 64514<br>Chicago<br>IL 60664<br>USA |
| **Assured's Agent:** | Offshore Risk Management Ltd<br>807 Forrest Avenue<br>Cocoa<br>FL 32922 |

It is hereby noted and agreed that with effect from Friday May 6, 2022

The Chicago Park District and Westrec Marina Management, Inc. 1521 S. Linn White Drive, 1st Floor South, Chicago, IL 60605 is noted as an additional assured subject to the attached Marina Additional Assured Endorsement.

In consideration of which, an Additional Premium of US$ 25 is due.

All other terms and conditions remain unaltered.

| | |
|---|---|
| **Insurance Provider:** | Accelerant Specialty Insurance Company |
| **Signed:** | Monday May 9, 2022 |

For and on behalf of Participating Underwriters/Insurers

For more information regarding Concept Special Risks Ltd, policy wordings, endorsement wordings, standard forms and frequently asked questions, please see our website www.special-risks.com.

**Concept Special Risks Ltd**
+44 (0) 1943 882 700  ·  www.special-risks.com
Unity House  ·  2 Station Court  ·  Station Road  ·  Guiseley  ·  LEEDS  ·  LS20 8EY  ·  United Kingdom

# Marina Additional Assured Endorsement

Notwithstanding the fact that such parties as advised are hereby named in their capacity as Additional Assured under this Insuring Agreement, this cover will only extend insofar as they may be found liable to pay in the first instance for liabilities which are properly the responsibility of the Assured, and nothing herein contained shall be construed as extending cover in respect of any amount which would not have been recoverable hereunder by the Assured had such claim been made or enforced against them. Once indemnification hereunder has been made there shall be no further liability hereunder to make any further payment to any person or company whatsoever, including the Assured, in respect of that claim.

All rights granted to Us together with all duties of an Assured under the Insuring Agreement shall also apply to any other named Additional Assured jointly.

Nothing in this Insuring Agreement shall be construed as extending coverage to indemnify the Additional Assured for their own negligent act, omission or those of their employees, servants, agents or sub-contractors whether they be deemed independent or otherwise that would be their own legal liability. Nor shall this endorsement be construed as a waiver of any rights of subrogation of the Assured against the named Additional Assured for damages caused by the Additional Assured's negligent act or omission or breach of contractual obligations or as may be granted at law.

In consideration of this the Additional Assured hereby waives any exculpatory language term or condition set out within any agreement that exists or may exist between the Assured and themselves whether such language, term or condition seeks to limit the liability or otherwise of the Additional Assured to the Assured.

**ALL OTHER TERMS, CLAUSES AND CONDITIONS REMAIN UNALTERED.**



# Policy Endorsement

| | |
|---|---|
| **Declaration Number:** | CSRYP/212464 |
| | This endorsement attaches to and forms part of the policy. |
| **Endorsement:** | 2 |
| **Assured:** | Theresa Tran dba Chicago AquaLeisure, LLC |
| **Assured's Address:** | PO Box 64514<br>Chicago<br>IL 60664<br>USA |
| **Assured's Agent:** | Offshore Risk Management Ltd<br>807 Forrest Avenue<br>Cocoa<br>FL 32922 |

It is hereby noted and agreed that with effect from Tuesday May 24, 2022

The name of the additional assured is hereby amended to The Chicago Park District and Westrec SMI, 1521 S. Linn White Drive, 1st Floor, South, Chicago, IL 60605 subject to the attached Marina Additional Assured Endorsement.

All other terms and conditions remain unaltered.

**Signed:**  Wednesday May 25, 2022

For and on behalf of Participating Underwriters/Insurers

For more information regarding Concept Special Risks Ltd, policy wordings, endorsement wordings, standard forms and frequently asked questions, please see our website www.special-risks.com.

**Concept Special Risks Ltd**
+44 (0) 1943 882 700 · www.special-risks.com
Unity House · 2 Station Court · Station Road · Guiseley · LEEDS · LS20 8EY · United Kingdom

# Marina Additional Assured Endorsement

Notwithstanding the fact that such parties as advised are hereby named in their capacity as Additional Assured under this Insuring Agreement, this cover will only extend insofar as they may be found liable to pay in the first instance for liabilities which are properly the responsibility of the Assured, and nothing herein contained shall be construed as extending cover in respect of any amount which would not have been recoverable hereunder by the Assured had such claim been made or enforced against them. Once indemnification hereunder has been made there shall be no further liability hereunder to make any further payment to any person or company whatsoever, including the Assured, in respect of that claim.

All rights granted to Us together with all duties of an Assured under the Insuring Agreement shall also apply to any other named Additional Assured jointly.

Nothing in this Insuring Agreement shall be construed as extending coverage to indemnify the Additional Assured for their own negligent act, omission or those of their employees, servants, agents or sub-contractors whether they be deemed independent or otherwise that would be their own legal liability. Nor shall this endorsement be construed as a waiver of any rights of subrogation of the Assured against the named Additional Assured for damages caused by the Additional Assured's negligent act or omission or breach of contractual obligations or as may be granted at law.

In consideration of this the Additional Assured hereby waives any exculpatory language term or condition set out within any agreement that exists or may exist between the Assured and themselves whether such language, term or condition seeks to limit the liability or otherwise of the Additional Assured to the Assured.

**ALL OTHER TERMS, CLAUSES AND CONDITIONS REMAIN UNALTERED.**



Concept Special Risks

# Policy Endorsement

**Declaration Number:**   CSRYP/212464

This endorsement attaches to and forms part of the policy.

**Endorsement:**   3

**Assured:**   Theresa Tran dba Chicago AquaLeisure, LLC

**Assured's Address:**   PO Box 64514
Chicago
IL 60664
USA

**Assured's Agent:**   Offshore Risk Management Ltd
807 Forrest Avenue
Cocoa
FL 32922

---

It is hereby noted and agreed that with effect from Monday August 1, 2022

The Hull ID for the Scheduled Vessel is noted as GFNCY003E203.

All other terms and conditions remain unaltered.

---

**Signed:**   Tuesday August 2, 2022

For and on behalf of Participating Underwriters/Insurers

For more information regarding Concept Special Risks Ltd, policy wordings, endorsement wordings, standard forms and frequently asked questions, please see our website www.special-risks.com.