## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS - EASTERN DIVISION

THERESA TRAN, *et al*.,

               Limitation
               Plaintiffs,

v.

Lana Batochir, Marija Velkova and Jacob
Houle

.

               Claimants.

Case No. 1:22-CV-06478

Honorable Joan B. Gottschall

### <u>DECLARATION OF RANDALL W. SLADE</u>

I, Randall Slade, have personal knowledge of the facts stated in this Declaration, and if called to testify, I would competently testify as follows;

1.      I am one of the attorneys of record Limitation Plaintiffs Theresa Tran and Chicago Aqualeisure, LLC. *See,* ECF Dkt. #6.

2.      Attached hereto are true and correct copies of the following:

      a.      Theresa Tran and Chicago AquaLeisure, LLC's Interrogatories to Claimant Lana Batochir;

      b.      Theresa Tran and Chicago AquaLeisure, LLC's Interrogatories to Claimant Marija Velkova;

      c.      Theresa Tran and Chicago AquaLeisure, LLC's Interrogatories to Claimant Jacob Houle;

     d.     Theresa Tran and Chicago AquaLeisure LLC's Production Request to

               Claimant Lana Batochir;

     e.     Theresa Tran and Chicago AquaLeisure LLC's Production Request to

               Claimant Marija Velkova; and

     f.     Theresa Tran and Chicago AquaLeisure LLC's Production Request to

               Claimant Jacob Houle (collectively the "Discovery Requests").

3.     The Discovery Requests were served on counsel of record for the Claimants Lana

Batochir, Marija Velvkova and Jacob Houle on February 20, 2023 via e-mail to the email

addresses of record for counsel representing the Claimants Lana Batochir, Marija Velvkova and

Jacob Houle.

4.     The Certificate of Service of the Discovery Requests was filed on February 20,

2023 as ECF Docket # 30.

     I declare under penalty of penalty under the laws of the United States of America that the

foregoing is true and correct.

Executed on March 28, 2023.

_____

Randall W. Slade

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS - EASTERN DIVISION**

| | |
|---|---|
| THERESA TRAN, et al., | Case No. 1:22-CV-06478 |
| Plaintiffs, | Honorable Joan B. Gottschall |
| v. | |
| John Doe, et al., | |
| Defendants. | |

**THERESA TRAN AND CHICAGO AQUALEISURE LLC'S**
**INTERROGATORIES TO CLAIMANT LANA BATOCHIR**

NOW COME Theresa Tran and Chicago AquaLeisure LLC, through their attorneys Franco Moroney Buenik, LLC, and hereby request that Claimant Lana Batochir ("BATOCHIR") answer the following interrogatories under oath within thirty (30) days pursuant to the Federal Rule of Civil Procedure 33:

**DEFINITIONS AND INSTRUCTIONS**

1.      The following definitions apply to these Interrogatories:

     A.      "Admiralty Complaint" shall mean the Complaint in Admiralty for Exoneration From or Limitation of Liability filed by Theresa Tran and Chicago AquaLeisure, LLC in this case.

     B.      "Limitation Plaintiffs" shall mean Theresa Tran and/or Chicago Aqualeisure, LLC.

     C.      "Claim" shall mean "Claimant Batochir's Claim for Personal Injuries in Response to Complaint in Admiralty for Exoneration From or Limitation of Liability" filed in this case.

2.      "Document" means any written or graphic matter of whatever kind or nature, including, without limitation, contracts, correspondence, drawings, renderings, letters, telegrams, memoranda, analyses, studies, reports, summaries, invoices, billings, notes, files, books, pamphlets, articles, e-mails, bulletins, directives, resolutions, reviews, publications, pleadings, court papers, diaries, calendars, logs, telephone bills or logs, any evidence of telephone or other conversations, tests, projections, check receipts, agreements, messages, tapes, computer tapes, computer discs, computer cards, recordings, videotapes, film, microfilm, microfiche, accounts, ledgers, magnetic media, statements, financial data, or any other means of preserving thought or expression, and means the original and each subsequent draft, each non-identical copy (whether non-identical due to alterations, attachments, blanks, comments, notes, underlining, highlighting, or otherwise) of any writing or record, however, described, wherever the document is located, however produced or reproduced, whether draft or final version.  A document with handwritten or typewritten notes, notations, comments, or editing marks, is not, and shall not be deemed, identical to one without such marks for the purposes of these document production requests.

3.      "Person" means any natural person, governmental entity or agency, and any artificial person of any type including but not limited to a corporation, partnership, joint venture, firm, trust, group, association, or any other business entity and/or their parents, affiliates, subsidiaries, predecessors, and/or successors.

4.      The terms "and" and "or" shall be construed disjunctively or conjunctively as necessary in order to bring within the scope of this pleading all responses which might otherwise be construed to be outside its scope.

5.     The singular shall always include the plural, and the present tense shall always include the past tense as necessary to bring within the scope of this pleading all responses which might otherwise be construed to be outside its scope.

6.     "Relating to" or "relate to" means to consist of, refer to, pertain to, reflect, or be in any way logically or factually connected with the matter discussed, and includes documents underlying, supporting, appended to, or used in the preparation of, any document requested.

7.     The word "communication" means any oral or written transmittal of information, opinion, belief, idea or statement whether made in person, by telephone, document, e-mail, electronic delivery, or by any other means.

8.     If an objection is made to part of a particular interrogatory, that part should be specified, and answer should be made in response to the portion of the interrogatory to which there is no objection.

9.     Whenever one of the following interrogatories calls for the identification of a person, you are directed to state the person's full name and address.  If the person is a natural person, the identification should also include the person's most recent occupation and employer, and the name and address of that employer.  If any such information was different during that period with which a particular interrogatory is principally concerned, the identification should include both current information and such different information as was applicable during the period principally at issue.

10.     Whenever one of the following interrogatories calls for the identification of a communication, you are directed to state the nature of the communication (e.g., conference,

telephone conversation); the date and place of the communication; the identity of each person who was present at or who participated in the communication; and the substance of the communication.

11.     Whenever one of the following interrogatories calls for the identification of a document, you are directed to state the date of creation or receipt of the document; the identity of its author; the identity of its addressee; the identity of each recipient of the original document or a copy thereof; a brief description of its nature (e.g., letter, telegram, e-mail, memo, etc.) and contents; its title; its number of pages; the number and subject of its attachments; its custodian; and its last known location.

12.     In lieu of identifying a particular document, you may attach a true and correct copy of such document as an exhibit to its responses to these interrogatories or produce such document for inspection and copying to counsel for propounding party as long as such document is accompanied by a notice explicitly referring to the interrogatory to which the document is alleged to relate.

13.     You are directed to identify or produce the original of each document encompassed by these interrogatories, as well as any drafts, revisions or copies of same which bear any mark or notation not present on the original, or which otherwise differ from the original.

14.     If you are unable to answer any of these interrogatories in full, you are directed to respond to the extent possible, and to specify the reasons for your inability to answer the interrogatory in its entirety.

15.     If you or your counsel does not understand any of these interrogatories, or if there exist any questions with respect thereto, your counsel is requested to contact the Limitation Plaintiffs' counsel immediately.

16.     Unless otherwise specified, these Interrogatories request information from August 1, 2022, through and including the date the Answers, including any supplements or amendments thereto.

## INTERROGATORIES

1.     State the name, employer, job title and date of birth of the person answering these interrogatories and all persons who assisted in answering these interrogatories and/or providing information used in these answers.

**ANSWER**:

2.     State the name, last known address, telephone number, date of birth, and employer of each person who either witnessed or claims to have knowledge of the facts alleged in BATOCHIR's Claim or Answer and Affirmative Defenses to the Admiralty Complaint.

**ANSWER**:

3.     Do you have statements from any person who claims to have knowledge of any of the facts or claims  alleged in BATOCHIR'S Claim or Answer and Affirmative Defenses  to the Admiralty Complaint?   If so, state the name of the person giving the statement, to whom it was given, whether it was written or oral, the date which it was given, and who now has possession of the written or oral statement, memorandum or recording.

**ANSWER**:

4.     State the facts which BATOCHIR claims supports her assertion that "Joseph Neverauskas was acting as an agent, apparent and/or actual," of the LIMITATION PLAINTIFFS as alleged in the Claim and/or in BATOCHIR's Answer and Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of his alleged conduct, actions or omissions.

5

**ANSWER:**

     5.     State the facts which BATOCHIR claims supports her assertion that "Joseph Neverauskas was operating 'La Aqua Vida' on an excursion in the course and scope of this employment" with the LIMITATION PLAINTIFFS as alleged in the Claim and/or in BATOCHIR's Answer and Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of his alleged conduct, actions or omissions.

**ANSWER:**

     6.     State the facts which BATOCHIR claims supports her assertion that the LIMITATION PLAINTIFFS "failed to maintain a proper lookout" as alleged in the Claim and/or in BATOCHIR's Answer and Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of that alleged conduct, action or omission.

**ANSWER**:

     7.     State the facts which BOTOCHIR claims supports her assertion that the LIMITATION PLAINTIFFS "failed to proceed at a safe speed under the circumstances and conditions in order to appropriately stop to avoid colliding with LANA BATOCHIR" as alleged in the Claim and/or in BATOCHIR's Answer and Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of that alleged conduct, action or omission.

**ANSWER**:

     8.     State the facts which BATOCHIR claims supports her assertion that the LIMITATION PLAINTIFFS "operated 'La Aqua Vida' in a manner that unreasonably interfered with the Sea Ray's free and proper navigation of the waterways of the State of Illinois, in violation

of 625 ILCS 45/5-3" as alleged in the Claim and/or in BATOCHIR's Answer and Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of that alleged conduct, action or omission.

**ANSWER**:

9.     State the facts which BATOCHIR claims supports her assertion that the LIMITATION PLAINTIFFS "operated 'La Aqua Vida' in a manner as to endanger the life or limb, in violation of Chicago City Ordinance 10-40-260(a)" as alleged in the Claim and and/or in BATOCHIR's Answer and Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of that alleged conduct, action or omission.

**ANSWER:**

10.     State the facts which BATOCHIR claims supports her assertion that the LIMITATION PLAINTIFFS "operated 'La Aqua Vida' in a manner which presented an unreasonable danger of injury, in violation of Chicago Park District Harbor Rule (2)(e)(1)" as alleged in the Claim and and/or in BATOCHIR's Answer and Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of that alleged conduct, action or omission.

**ANSWER:**

11.     State the facts which BATOCHIR claims supports her assertion that the LIMITATION PLAINTIFFS "failed to adequately supervise its employees and/or agents, including Joseph Neverauskas" as alleged in the Claim and/or in BATOCHIR's Answer and Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of that alleged conduct, action or omission.

**ANSWER:**

12.     State the facts which BATOCHIR claims supports her assertion that the LIMITATION PLAINTIFFS "failed to adequately train its(/her) employees and/or agents, including Joseph Neverauskas" as alleged in the Claim and/or in BATOCHIR's Answer and Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of that alleged conduct, action or omission.

**ANSWER:**

13.     State the facts which BATOCHIR claims supports her assertion that the LIMITATION PLAINTIFFS "failed to adequately maintain the subject vessel" as alleged in the Claim and/or in BATOCHIR's Answer and Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of that alleged conduct, action or omission.

**ANSWER:**

14.     State the facts which BATOCHIR claims supports her assertion that the LIMITATION PLAINTIFFS "failed to maintain the subject vessel, such that it was rendered unseaworthy" or that the La Aqua Vida was "unseaworthy" as alleged in the Claim and/or in BATOCHIR's Answer and Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of that alleged conduct, action, omission or unseaworthy conditions.

**ANSWER:**

15.     State the facts which BATOCHIR claims supports her assertion that the LIMITATION PLAINTIFFS "had privity to and knowledge of acts, events, and conditions constituting negligence and/or unseaworthiness which legally caused the occurrence and

Claimant's resultant injuries and damages" as alleged in the Claim and/or in BATOCHIR's Answer and Affirmative Defenses to the Admiralty Complaint.

**ANSWER:**

16.   State the facts   which BATOCHIR   claims supports her assertion that the LIMITATION PLAINTIFFS's "vessel was unseaworthy, not staunch, not tight, not strong, improperly manned, improperly equipped, improperly supplied, defective and in all respects, unfit for operational service for which it was engaged" as alleged in the Claim and/or in BATOCHIR's Answer and Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of these issues or "had privity or knowledge of the vessel's unseaworthy condition(s) and/or defect(s) and knew or should have known "that the danger(s) and/or risk(s) associate with the unseaworthy condition(s) and/or defect(s) of the vessel could cause severe injuries to others, including Claimant".

**ANSWER:**

February 20, 2023

                                                  Respectfully submitted,

                                      By:   _____
                                                  Attorneys for THERESA TRAN and
                                                  CHICAGO AQUALEISURE, LLC

Robert J. Franco
John J. Moroney
Randall W. Slade
Franco Moroney Buenik, LLC
500 West Madison Street, Suite 3900
Chicago, Illinois 60661-2510
(312) 469-1000
Robert.franco@francomoroney.com
John.moroney@francomoroney.com
Randall.slade@francomoroney.com

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS - EASTERN DIVISION**

| | |
|---|---|
| THERESA TRAN, et al., | Case No. 1:22-CV-06478 |
| Plaintiffs, | Honorable Joan B. Gottschall |
| v. | |
| John Doe, et al., | |
| Defendants. | |

**THERESA TRAN AND CHICAGO AQUALEISURE LLC'S**
**PRODUCTION REQUEST TO CLAIMANT LANA BATOCHIR**

NOW COME Theresa Tran and Chicago AquaLeisure LLC, through their attorneys Franco Moroney Buenik, LLC, and hereby request that Claimant Lana Batochir ("BATOCHIR") produce at our offices 500 West. Madison Street, Suite 3900, Chicago, Illinois the following (together with any transcripts, memoranda or recordings purported to reflect but not evaluate the same) within thirty (30) days pursuant to the Federal Rule of Civil Procedure 34:

**DEFINITIONS AND INSTRUCTIONS**

1.  The following definitions apply to this Production Request:

    a.  "Admiralty Complaint" shall mean the Complaint in Admiralty for Exoneration From or Limitation of Liability filed by Theresa Tran and Chicago AquaLeisure, LLC in this case.

    b.  "Limitation Plaintiffs" shall mean Theresa Tran and/or Chicago AquaLeisure, LLC.

1

c.     "Claim" shall mean "Claimant Batochir's Claim for Personal Injuries in Response to Complaint in Admiralty for Exoneration From or Limitation of Liability" filed in this case.

2.     "Document" means any written or graphic matter of whatever kind or nature, including, without limitation, contracts, correspondence, drawings, renderings, letters, telegrams, memoranda, analyses, studies, reports, summaries, invoices, billings, notes, files, books, pamphlets, articles, e-mails, bulletins, directives, resolutions, reviews, publications, pleadings, court papers, diaries, calendars, logs, telephone bills or logs, any evidence of telephone or other conversations, tests, projections, check receipts, agreements, messages, tapes, computer tapes, computer discs, computer cards, recordings, videotapes, film, microfilm, microfiche, accounts, ledgers, magnetic media, statements, financial data, or any other means of preserving thought or expression, and means the original and each subsequent draft, each non-identical copy (whether non-identical due to alterations, attachments, blanks, comments, notes, underlining, highlighting, or otherwise) of any writing or record, however, described, wherever the document is located, however produced or reproduced, whether draft or final version.  A document with handwritten or typewritten notes, notations, comments, or editing marks, is not, and shall not be deemed, identical to one without such marks for the purposes of these document production requests.

3.     Person" means any natural person, governmental entity or agency, and any artificial person of any type including but not limited to a corporation, partnership, joint venture, firm, trust, group, association, or any other business entity and/or their parents, affiliates, subsidiaries, predecessors, and/or successors.

4.     The terms "and" and "or" shall be construed disjunctively or conjunctively as necessary in order to bring within the scope of this pleading all responses which might otherwise be construed to be outside its scope.

2

5. The singular shall always include the plural, and the present tense shall always include the past tense as necessary to bring within the scope of this pleading all responses which might otherwise be construed to be outside its scope.

6. "Relating to" or "relate to" means to consist of, refer to, pertain to, reflect, or be in any way logically or factually connected with the matter discussed, and includes documents underlying, supporting, appended to, or used in the preparation of, any document requested.

7. The word "communication" means any oral or written transmittal of information, opinion, belief, idea or statement whether made in person, by telephone, document, e-mail, electronic delivery, or by any other means.

8. If an objection is made to part of a particular document production request, that part should be specified, and production should be made in response to the portion of the document production request to which there is no objection. Should a party withhold any information requested by the following document production request, that party shall list any documents withheld from production or identification by reason of any claim of privilege, and state for each such document or information:

    a. the type of document (*e.g.*, letter, interoffice memorandum,);
    b. the identity of each person who participated in its preparation;
    c. the identity of its signers;
    d. the document's recipients, as well as those persons receiving copies;
    e. the document's date;
    f. a brief description of the nature and subject matter of the document;
    g. the document's present or last known location and custodian of the original document; and
    h. the statute, rule or decision which is claimed to give rise to the privilege.

9. You are directed to identify or produce the original of each document encompassed by these document production requests, as well as any drafts, revisions or copies of same which bear any mark or notation not present on the original, or which otherwise differ from the original.

10.     If you object to any specific document production request, in whole or in part, you are directed to produce requested documents to the extent which it does not object, and your counsel is requested to contact counsel for the LIMITATION PLAINTIFFS to discuss said objection prior to the due date of your responses.  With respect to any document which you believe is exempt from disclosure on the grounds of attorney-client privilege, attorney-work product privilege, or any other privilege, you are directed to provide a written statement to counsel for the LIMITATION PLAINTIFFS  signed by your counsel, setting forth, as to each document: the date of creation or receipt of the document; the identity of its author; the identity of each addressee of the document; the identity of each recipient of the original document or a copy thereof; the identity of each person who had seen the original document or a copy thereof; a brief description of its nature and contents; its title; its number of pages; the nature and subject of its attachments; its custodian; its last known location; and the statute, rule or decision which purportedly gives rise to such privilege.

11.      If you or your counsel do not understand any of these document production requests, or if there exist any questions with respect thereto, your counsel is requested to contact the LIMITATION PLAINTIFFS's counsel immediately.

12.     Unless otherwise specified, this Request seeks documents from August 1, 2022 through and including the date of production, including any supplements or amendments thereto.

## **DOCUMENTS TO BE PRODUCED**

1.      Any and all documents, notes, communications, statements or summaries of statements whether written, oral, recorded, or transcribed, of, from or made by BATOCHIR relating to the allegations in the Claim and/or BATOCHIR's Answer and Affirmative Defenses to the Admiralty Complaint.

4

**RESPONSE:**

2.      Any and all documents, notes, communications, statements or summaries of statements whether written, oral, recorded, or transcribed, of, from or made by the LIMITATION PLAINTIFFS relating to the allegations in the Claim and/or BATOCHIR's Answer and Affirmative Defenses to the Admiralty Complaint.

**RESPONSE:**

3.      Any and all documents, notes, communications, statements or summaries of statements whether written, oral, recorded, or transcribed, of, from or made by any other person or entity relating to the allegations in the Claim and/or BATOCHIR's Answer and Affirmative Defenses to the Admiralty Complaint.

**RESPONSE:**

4.      Any and all documents relating to or which BATOCHIR claims supports her assertion that "Joseph Neverauskas was acting as an agent, apparent and/or actual," of the LIMITATION PLAINTIFFS    as alleged in the Claim and/or in BATOCHIR's Answer and Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of his alleged conduct, actions or omissions.

**RESPONSE:**

5.      Any and all documents relating to or which BATOCHIR claims supports her assertion that "Joseph Neverauskas was operating 'La Aqua Vida' on an excursion in the course and scope of this employment" with the LIMITATION PLAINTIFFS as alleged in the Claim and/or in BATOCHIR's Answer and Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of his alleged conduct, actions or omissions.

**RESPONSE:**

6.     Any and all documents relating to or which BATOCHIR claims supports her assertion that the LIMITATION PLAINTIFFS "failed to maintain a proper lookout" as alleged in the Claim and/or in BATOCHIR's Answer and Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of that alleged conduct, action or omission.

**RESPONSE:**

7.     Any and all documents relating to or which BOTOCHIR claims supports her assertion that the LIMITATION PLAINTIFFS "failed to proceed at a safe speed under the circumstances and conditions in order to appropriately stop to avoid colliding with LANA BATOCHIR" as alleged in the Claim and/or in BATOCHIR's Answer and Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of that alleged conduct, action or omission.

**RESPONSE:**

8.     Any and all documents relating to or which BATOCHIR  claims supports her assertion that the LIMITATION PLAINTIFFS " operated 'La Aqua Vida' in a manner that unreasonably interfered with the Sea Ray's free and proper navigation of the waterways of the State of Illinois, in violation of 625 ILCS 45/5-3" as alleged in the Claim and/or in BATOCHIR's Answer and Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of that alleged conduct, action or omission.

**RESPONSE:**

9.      Any and all documents relating to or which BATOCHIR claims supports her assertion that the LIMITATION PLAINTIFFS "operated 'La Aqua Vida' in a manner as to endanger the life or limb, in violation of Chicago City Ordinance 10-40-260(a)" as alleged in the Claim and and/or in BATOCHIR's Answer and Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of that alleged conduct, action or omission.

**<u>RESPONSE:</u>**

10.      Any and all documents relating to or which BATOCHIR claims supports her assertion that the LIMITATION PLAINTIFFS "operated 'La Aqua Vida' in a manner which presented an unreasonable danger of injury, in violation of Chicago Park District Harbor Rule (2)(e)(1)" as alleged in the Claim and and/or in BATOCHIR's Answer and Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of that alleged conduct, action or omission.

**<u>RESPONSE:</u>**

11.      Any and all documents relating to or which BATOCHIR claims supports her assertion that the LIMITATION PLAINTIFFS "failed to adequately supervise its employees and/or agents, including Joseph Neverauskas" as alleged in the Claim and/or in BATOCHIR's Answer and Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of that alleged conduct, action or omission.

**<u>RESPONSE:</u>**

12.      Any and all documents relating to or which BATOCHIR claims supports her assertion that the LIMITATION PLAINTIFFS "failed to adequately train its(/her) employees and/or agents, including Joseph Neverauskas" as alleged in the Claim and and/or in BATOCHIR's

Answer and Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of that alleged conduct, action or omission.

**RESPONSE:**

13.    Any and all documents relating to or which BATOCHIR claims supports her assertion that the LIMITATION PLAINTIFFS "failed to adequately maintain the subject vessel" as alleged in the Claim and/or in BATOCHIR's Answer and Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of that alleged conduct, action or omission.

**RESPONSE:**

14.    Any and all documents relating to or which BATOCHIR claims supports her assertion that the LIMITATION PLAINTIFFS "failed to maintain the subject vessel, such that it was rendered unseaworthy" or that the La Aqua Vida was "unseaworthy" as alleged in the Claim and/or in BATOCHIR's Answer and Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of that alleged conduct, action, omission or unseaworthy conditions.

**RESPONSE:**

15.    Any and all documents relating to or which BATOCHIR claims supports her assertion that the LIMITATION PLAINTIFFS "had privity to and knowledge of acts, events, and conditions constituting negligence and/or unseaworthiness which legally caused the occurrence and Claimant's resultant injuries and damages" as alleged in the Claim and/or in BATOCHIR's Answer and Affirmative Defenses to the Admiralty Complaint.

**RESPONSE:**

16.    Any and all documents relating to or which BATOCHIR  claims supports her assertion that the LIMITATION PLAINTIFFS's "vessel was unseaworthy, not staunch, not tight, not strong, improperly manned, improperly equipped, improperly supplied, defective and in all respects, unfit for operational service for which it was engaged"  as alleged in the Claim and/or in BATOCHIR's Answer and Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of these issues or  "had privity or knowledge of the vessel's unseaworthy condition(s) and/or defect(s) and knew or should have known "that the danger(s) and/or risk(s) associate with the unseaworthy condition(s) and/or defect(s) of the vessel could cause severe injuries to others, including Claimant".

**RESPONSE:**

February 20, 2023                                  Respectfully submitted,

                                        By:    _____

                                                Attorneys for THERESA TRAN and
                                                CHICAGO AQUALEISURE, LLC

Robert J. Franco
John J. Moroney
Randall W. Slade
Franco Moroney Buenik, LLC
500 West Madison Street, Suite 3900
Chicago, Illinois 60661-2510
(312) 469-1000
Robert.franco@francomoroney.com
John.moroney@francomoroney.com
Randall.slade@francomoroney.com

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS - EASTERN DIVISION**

THERESA TRAN, et al.,

               Plaintiffs,

v.

John Doe, et al.,

               Defendants.

Case No. 1:22-CV-06478

Honorable Joan B. Gottschall

**THERESA TRAN AND CHICAGO AQUALEISURE LLC'S
INTERROGATORIES TO CLAIMANT MARIJA VELKOVA**

NOW COME Theresa Tran and Chicago AquaLeisure LLC, through their attorneys Franco Moroney Buenik, LLC, and hereby request that Claimant Marija Velkova ("VELKOVA") answer the following interrogatories under oath within thirty (30) days pursuant to the Federal Rule of Civil Procedure 33:

**DEFINITIONS AND INSTRUCTIONS**

1.     The following definitions apply to these Interrogatories:

    A.    "Admiralty Complaint" shall mean the Complaint in Admiralty for Exoneration From or Limitation of Liability filed by Theresa Tran and Chicago AquaLeisure, LLC in this case.

    B.    "Limitation Plaintiffs" shall mean Theresa Tran and/or Chicago AquaLeisure, LLC.

    C.    "Claim" shall mean "Claimant Marija Velkova's Claim in Response to Complaint in Admiralty For Exoneration From or Limitation of Liability" filed in this case.

1

2.     "Document" means any written or graphic matter of whatever kind or nature, including, without limitation, contracts, correspondence, drawings, renderings, letters, telegrams, memoranda, analyses, studies, reports, summaries, invoices, billings, notes, files, books, pamphlets, articles, e-mails, bulletins, directives, resolutions, reviews, publications, pleadings, court papers, diaries, calendars, logs, telephone bills or logs, any evidence of telephone or other conversations, tests, projections, check receipts, agreements, messages, tapes, computer tapes, computer discs, computer cards, recordings, videotapes, film, microfilm, microfiche, accounts, ledgers, magnetic media, statements, financial data, or any other means of preserving thought or expression, and means the original and each subsequent draft, each non-identical copy (whether non-identical due to alterations, attachments, blanks, comments, notes, underlining, highlighting, or otherwise) of any writing or record, however, described, wherever the document is located, however produced or reproduced, whether draft or final version.  A document with handwritten or typewritten notes, notations, comments, or editing marks, is not, and shall not be deemed, identical to one without such marks for the purposes of these document production requests.

3.     "Person" means any natural person, governmental entity or  agency,  and any artificial person of any type including but not limited to a corporation, partnership, joint venture, firm, trust, group, association, or any other business entity and/or their parents, affiliates, subsidiaries, predecessors, and/or successors.

4.     The terms "and" and "or" shall be construed disjunctively or conjunctively as necessary in order to bring within the scope of this pleading all responses which might otherwise be construed to be outside its scope.

2

5.     The singular shall always include the plural, and the present tense shall always include the past tense as necessary to bring within the scope of this pleading all responses which might otherwise be construed to be outside its scope.

6.     "Relating to" or "relate to" means to consist of, refer to, pertain to, reflect, or be in any way logically or factually connected with the matter discussed, and includes documents underlying, supporting, appended to, or used in the preparation of, any document requested.

7.     The word "communication" means any oral or written transmittal of information, opinion, belief, idea or statement whether made in person, by telephone, document, e-mail, electronic delivery, or by any other means.

8.     If an objection is made to part of a particular interrogatory, that part should be specified, and answer should be made in response to the portion of the interrogatory to which there is no objection.

9.     Whenever one of the following interrogatories calls for the identification of a person, you are directed to state the person's full name and address.  If the person is a natural person, the identification should also include the person's most recent occupation and employer, and the name and address of that employer.  If any such information was different during that period with which a particular interrogatory is principally concerned, the identification should include both current information and such different information as was applicable during the period principally at issue.

10.     Whenever one of the following interrogatories calls for the identification of a communication, you are directed to state the nature of the communication (e.g., conference,

telephone conversation); the date and place of the communication; the identity of each person who was present at or who participated in the communication; and the substance of the communication.

11.     Whenever one of the following interrogatories calls for the identification of a document, you are directed to state the date of creation or receipt of the document; the identity of its author; the identity of its addressee; the identity of each recipient of the original document or a copy thereof; a brief description of its nature (e.g., letter, telegram, e-mail, memo, etc.) and contents; its title; its number of pages; the number and subject of its attachments; its custodian; and its last known location.

12.     In lieu of identifying a particular document, you may attach a true and correct copy of such document as an exhibit to its responses to these interrogatories or produce such document for inspection and copying to counsel for propounding party as long as such document is accompanied by a notice explicitly referring to the interrogatory to which the document is alleged to relate.

13.     You are directed to identify or produce the original of each document encompassed by these interrogatories, as well as any drafts, revisions or copies of same which bear any mark or notation not present on the original, or which otherwise differ from the original.

14.     If you are unable to answer any of these interrogatories in full, you are directed to respond to the extent possible, and to specify the reasons for your inability to answer the interrogatory in its entirety.

15.     If you or your counsel does not understand any of these interrogatories, or if there exist any questions with respect thereto, your counsel is requested to contact the Limitation Plaintiffs' counsel immediately.

16.     Unless otherwise specified, these Interrogatories request information from August 1, 2022, through and including the date the Answers, including any supplements or amendments thereto.

## **INTERROGATORIES**

1.     State the name, employer, job title and date of birth of the person answering these interrogatories and all persons who assisted in answering these interrogatories and/or providing information used in these answers.

**ANSWER**:

2.     State the name, last known address, telephone number, date of birth, and employer of each person who either witnessed or claims to have knowledge of the facts alleged in VELKOVA's Claim or Answer and Affirmative Defenses to the Admiralty Complaint.

**ANSWER**:

3.     Do you have statements from any person who claims to have knowledge of any of the facts or claims alleged in VELKOVA's  Claim or Answer and Affirmative Defenses  to the Admiralty Complaint?   If so, state the name of the person giving the statement, to whom it was given, whether it was written or oral, the date which it was given, and who now has possession of the written or oral statement, memorandum or recording.

**ANSWER**:

4.     State the facts which VELKOVA claims supports her assertion that she was injured by the acts or omissions of agents, actual or apparent, employees, or servants of the LIMITATION PLAINTIFFS   as alleged in the Claim and/or in VELKOVA's Answer and Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of the alleged agents' alleged conduct, actions or omissions.

5

**<u>ANSWER</u>:**

5.     State the facts which VELKOVA claims supports her assertion that Joseph Neverauskas ("NEVERAUSKAS") and the LIMITATION PLAINTIFFS  "failed to place or operate said vessel/boat in a safe, suitable and proper manner so as to give proper and adequate protection to the life and limb of any person or persons in the playpen, including Plaintiff" as alleged in the Claim and/or in VELKOVA's Answer and Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of that alleged conduct, action or omission.

**<u>ANSWER</u>:**

6.     State the facts which VELKOVA claims supports her assertion that NEVERAUSKAS and the LIMITATION PLAINTIFFS "failed to anchor said boat/vessel in a safe, suitable and proper manner, thereby creating a danger and /or hazard to any person or persons in the playpen, including Plaintiff" as alleged in the Claim and/or in VELKOVA's Answer and Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of that alleged conduct, action or omission.

**<u>ANSWER</u>:**

7.     State the facts which VELKOVA claims supports her assertion that NEVERAUSKAS and the LIMITATION PLAINTIFFS "failed to adequately and/or properly anchor said boat/vessel" as alleged in the Claim and/or in VELKOVA's Answer and Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of that alleged conduct, action or omission.

**<u>ANSWER</u>:**

8.     State the facts which VELKOVA   claims supports her assertion that NEVERAUSKAS and the LIMITATION PLAINTIFFS "caused said boat's/vessel's anchor to be placed, set and/or operated in a manner such that it was unsafe"  as alleged in the Claim and and/or in VELKOVA's Answer and Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of that alleged conduct, action or omission.

**ANSWER:**

9.     State the facts which VELKOVA claims supports her assertion that NEVERAUSKAS and the LIMITATION PLAINTIFFS "failed to properly and/or adequately inspect, investigate, and /or determine the position of said boat's/vessel's anchor"  as alleged in the Claim and and/or in VELKOVA's Answer and Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of that alleged conduct, action or omission.

**ANSWER:**

10.     State the facts which VELKOVA claims supports her assertion that NEVERAUSKAS and the LIMITATION PLAINTIFFS "failed to correct the condition of said boat's/vessel's anchor" as alleged in the Claim and/or in VELKOVA's Answer and Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of that alleged conduct, action or omission.

**ANSWER:**

11.     State the facts which VELKOVA   claims supports her assertion that NEVERAUSKAS and the LIMITATION PLAINTIFFS "failed to properly and/or adequately navigate said boat/vessel" as alleged in the Claim and/or in VELKOVA's Answer and Affirmative

Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of that alleged conduct, action or omission.

**ANSWER:**

12. State the facts which VELKOVA claims supports her assertion that NEVERAUSKAS and the LIMITATION PLAINTIFFS "failed to properly and/or adequately operate said boat/vessel" as alleged in the Claim and/or in VELKOVA's Answer and Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of that alleged conduct, action or omission.

**ANSWER:**

13. State the facts which VELKOVA claims supports her assertion that NEVERAUSKAS and the LIMITATION PLAINTIFFS "failed to adequately preplan for the safe, suitable, and /or proper navigation and/or operation of the boat" as alleged in the Claim and/or in VELKOVA's Answer and Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of that alleged conduct, action, or omission.

**ANSWER:**

14. State the facts which VELKOVA claims supports her assertion that NEVERAUSKAS and the LIMITATION PLAINTIFFS "operated said boat/vessel at an unsafe speed" as alleged in the Claim and/or in VELKOVA's Answer and Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of that alleged conduct, action or omission.

**ANSWER:**

15.     State the facts which VELKOVA claims supports her assertion that NEVERAUSKAS and the LIMITATION PLAINTIFFS "operated said boat/vessel in reverse without properly and/or adequately looking to determine if there were persons, including Plaintiff, in the path behind said boat/vessel" as alleged in the Claim and/or in VELKOVA's Answer and Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of that alleged conduct, action or omission.

**ANSWER:**

16.     State the facts which VELKOVA claims supports her assertion that NEVERAUSKAS and the LIMITATION PLAINTIFFS "operated said boat/vessel in reverse without proper and/or adequate visibility" as alleged in the Claim and/or in VELKOVA's Answer and Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of that alleged conduct, action or omission.

**ANSWER:**

17.     State the facts which VELKOVA claims supports her assertion that NEVERAUSKAS and the LIMITATION PLAINTIFFS "operated said boat/vessel in reverse without proper and/or adequate lookouts" as alleged in the Claim and/or in VELKOVA's Answer and Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of that alleged conduct, action or omission.

**ANSWER:**

18.     State the facts which VELKOVA claims supports her assertion that NEVERAUSKAS and the LIMITATION PLAINTIFFS "failed to take proper and/or adequate means and/or precautions for the safety of persons in the water, including Plaintiff, under the circumstances then and there existing" as alleged in the Claim and/or in VELKOVA's Answer and

Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of that alleged conduct, action or omission.

**ANSWER:**


19.     State the facts which VELKOVA claims supports her assertion that NEVERAUSKAS and the LIMITATION PLAINTIFFS "failed to warn" of any conduct, action, or omission which VELKOVA claims injured her as alleged in the Claim and/or in VELKOVA's Answer and Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of that alleged conduct, action or omission.

**ANSWER:**

20.     State the facts which VELKOVA claims supports her assertion that NEVERAUSKAS and the LIMITATION PLAINTIFFS "failed to adequately train to correct, maintain, and/or prevent" any conduct, action, omission or condition which VELKOVA claims injured her   as alleged in the Claim and/or in VELKOVA's Answer and Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of that alleged conduct, action, omission or condition.

**ANSWER:**

21.     State the facts which VELKOVA claims supports her assertion that NEVERAUSKAS and the LIMITATION PLAINTIFFS " failed to have an adequate policy, procedure, protocol, or rule to correct, maintain and/or prevent" any conduct, action, omissions or condition which VELKOVA claims injured her as alleged in the Claim and/or in VELKOVA's Answer and Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of that alleged conduct, action, omission or condition.

**ANSWER:**

22.     State the facts which VELKOVA claims supports her assertion that NEVERAUSKAS and the LIMITATION PLAINTIFFS "were otherwise careless and/or negligent" as alleged in the Claim and/or in VELKOVA's Answer and Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of that alleged careless or negligent conduct, action, or omission.

**ANSWER:**

23.     State the facts  which VELKOVA claims supports her assertion that the LIMITATION PLAINTIFFS's "vessel was unseaworthy, not staunch, not tight, not strong, improperly and/or inadequately manned, improperly and/or inadequately equipped, improperly and/or inadequately supplied, and/or defective and in all material respects, unfit for the operational service for which it was engaged"  as alleged in the Claim and/or in VELKOVA's Answer and Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS, "directly or indirectly, by and through their agents, actual or apparent, employees, and/or servants, had privity or knowledge" of these issues,  conditions or "had privity or knowledge of the vessel's unseaworthy condition(s) and/or defect(s) and knew or should have known "that the danger(s) and/or risk(s) associated with the unseaworthy condition(s) and/or defect(s) of the vessel could cause severe injuries to others, including Claimant".

**ANSWER:**

24.     State the facts  which VELKOVA claims supports her assertion that the LIMITATION PLAINTIFFS "(a) failed to adequately inspect, maintain and/or repair said

vessel/boat, (b) failed to establish and/or institute adequate inspection, maintenance, and/or repair procedures to assure said vessel/boat's equipment was maintained in good operating condition, (c) failed to establish and/or institute adequate procedures for various functions of said boat/vessel; (d) failed to require or provide said vessel/boat with an adequate crew, and/or (e) failed to adequately train and/or supervise their agents, actual or apparent, servants, and/or employees" or that the LIMITATION PLAINTIFFS had privity or knowledge of that alleged conduct, action, omissions or condition.

**ANSWER;**

25.     State the facts which VELKOVA claims supports her assertion that the LIMITATION PLAINTIFFS "had privity to and knowledge of acts, events, and conditions constituting negligence and/or unseaworthiness which legally caused the occurrence and Claimant's resultant injuries and damages" as alleged in the Claim and/or in VELKOVA's Answer and Affirmative Defenses to the Admiralty Complaint.

**ANSWER:**


February 20, 2023                                    Respectfully submitted,

                                                     By:   _____

                                                           Attorneys for THERESA TRAN and
                                                           CHICAGO AQUALEISURE, LLC

Robert J. Franco
John J. Moroney
Randall W. Slade
Franco Moroney Buenik, LLC
500 West Madison Street, Suite 3900
Chicago, Illinois 60661-2510
(312) 469-1000
Robert.franco@francomoroney.com
John.moroney@francomoroney.com
Randall.slade@francomoroney.com

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS - EASTERN DIVISION**

| | |
|---|---|
| THERESA TRAN, et al., | Case No. 1:22-CV-06478 |
| Plaintiffs, | Honorable Joan B. Gottschall |
| v. | |
| John Doe, et al., | |
| Defendants. | |

**THERESA TRAN AND CHICAGO AQUALEISURE LLC'S
PRODUCTION REQUESTS TO CLAIMANT MARIJA VELKOVA**

NOW COME Theresa Tran and Chicago AquaLeisure LLC, through their attorneys Franco Moroney Buenik, LLC, and hereby request that Claimant Marija Velkova ("VELKOVA") produce at our offices 500 West Madison Street, Suite 3900, Chicago Illinois the following (together with any transcripts, memoranda or recordings purported to reflect but not evaluate the same) within thirty (30) days pursuant to the Federal Rule of Civil Procedure 34:

**DEFINITIONS AND INSTRUCTIONS**

1.      The following definitions apply to this Production Request:

    A.      "Admiralty Complaint" shall mean the Complaint in Admiralty for Exoneration From or Limitation of Liability filed by Theresa Tran and Chicago AquaLeisure, LLC in this case.

    B.      "Limitation Plaintiffs" shall mean Theresa Tran and/or Chicago AquaLeisure, LLC.

1

       C.      "Claim" shall mean "Claimant Marija Velkova's Claim in Response to Complaint in Admiralty For Exoneration From or Limitation of Liability" filed in this case.

2.      "Document" means any written or graphic matter of whatever kind or nature, including, without limitation, contracts, correspondence, drawings, renderings, letters, telegrams, memoranda, analyses, studies, reports, summaries, invoices, billings, notes, files, books, pamphlets, articles, e-mails, bulletins, directives, resolutions, reviews, publications, pleadings, court papers, diaries, calendars, logs, telephone bills or logs, any evidence of telephone or other conversations, tests, projections, check receipts, agreements, messages, tapes, computer tapes, computer discs, computer cards, recordings, videotapes, film, microfilm, microfiche, accounts, ledgers, magnetic media, statements, financial data, or any other means of preserving thought or expression, and means the original and each subsequent draft, each non-identical copy (whether non-identical due to alterations, attachments, blanks, comments, notes, underlining, highlighting, or otherwise) of any writing or record, however, described, wherever the document is located, however produced or reproduced, whether draft or final version.  A document with handwritten or typewritten notes, notations, comments, or editing marks, is not, and shall not be deemed, identical to one without such marks for the purposes of these document production requests.

3.      "Person" means any natural person, governmental entity or agency, and any artificial person of any type including but not limited to a corporation, partnership, joint venture, firm, trust, group, association, or any other business entity and/or their parents, affiliates, subsidiaries, predecessors, and/or successors.

4.     The terms "and" and "or" shall be construed disjunctively or conjunctively as necessary in order to bring within the scope of this pleading all responses which might otherwise be construed to be outside its scope.

5.     The singular shall always include the plural, and the present tense shall always include the past tense as necessary to bring within the scope of this pleading all responses which might otherwise be construed to be outside its scope.

6.     "Relating to" or "relate to" means to consist of, refer to, pertain to, reflect, or be in any way logically or factually connected with the matter discussed, and includes documents underlying, supporting, appended to, or used in the preparation of, any document requested.

7.     The word "communication" means any oral or written transmittal of information, opinion, belief, idea or statement whether made in person, by telephone, document, e-mail, electronic delivery, or by any other means.

8.     If an objection is made to part of a particular document production request, that part should be specified, and production should be made in response to the portion of the document production request to which there is no objection.  Should a party withhold any information requested by the following document production request, that party shall list any documents withheld from production or identification by reason of any claim of privilege, and state for each such document or information:

     a.     the type of document (*e.g.*, letter, interoffice memorandum,);
     b.     the identity of each person who participated in its preparation;
     c.     the identity of its signers;
     d.     the document's recipients, as well as those persons receiving copies;
     e.     the document's date;
     f.     a brief description of the nature and subject matter of the document;

       g.      the document's present or last known location and custodian of the original document; and

       h.      the statute, rule or decision which is claimed to give rise to the privilege.

9.      You are directed to identify or produce the original of each document encompassed by these document production requests, as well as any drafts, revisions, or copies of same which bear any mark or notation not present on the original, or which otherwise might differ from the original.

10.      If you object to any specific document production request, in whole or in part, you are directed to produce requested documents to the extent which it does not object, and your counsel is requested to contact counsel for the LIMITATION PLAINTIFFS to discuss said objection prior to the due date of your responses.  With respect to any document which you believe is exempt from disclosure on the grounds of attorney-client privilege, attorney-work product privilege, or any other privilege, you are directed to provide a written statement to counsel for the LIMITATION PLAINTIFFS  signed by your counsel, setting forth, as to each document: the date of creation or receipt of the document; the identity of its author; the identity of each addressee of the document; the identity of each recipient of the original document or a copy thereof; the identity of each person who had seen the original document or a copy thereof; a brief description of its nature and contents; its title; its number of pages; the nature and subject of its attachments; its custodian; its last known location; and the statute, rule or decision which purportedly gives rise to such privilege.

11.      If you or your counsel do not understand any of these document production requests, or if there exist any questions with respect thereto, you counsel is requested to contact the LIMITATION PLAINTIFF's counsel immediately.

12.     Unless otherwise specified, this Request seeks documents from August 1, 2022 through and including the date of production, including any supplements or amendments thereto.

## DOCUMENTS TO BE PRODUCED

1.      Any and all documents, notes, communications, statements or summaries of statements whether written, oral, recorded, or transcribed, of, from or made by VELKOVA relating to the allegations in the Claim and/or VELKOVA's Answer and Affirmative Defenses to the Admiralty Complaint.

**RESPONSE:**

2.      Any and all documents, notes, communications, statements or summaries of statements whether written, oral, recorded, or transcribed, of, from or made by the LIMITATION PLAINTIFFS relating to the allegations in the Claim and/or VELKOVA's Answer and Affirmative Defenses to the Admiralty Complaint.

**RESPONSE:**

3.      Any and all documents, notes, communications, statements or summaries of statements whether written, oral, recorded, or transcribed, of, from or made by any other person or entity relating to the allegations in the Claim and/or VELKOVA's Answer and Affirmative Defenses to the Admiralty Complaint.

**RESPONSE:**

4.      Any and all documents relating to or which VELKOVA claims supports her assertion that she was injured by the acts or omissions of agents, actual or apparent, of the LIMITATION PLAINTIFFS as alleged in the Claim and/or in VELKOVA's Answer and Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of the alleged agents' alleged conduct, actions or omissions.

**RESPONSE:**

5.      Any and all documents relating to or which VELKOVA claims supports her assertion that she was injured by the acts or omissions of employees and servants of the LIMITATION PLAINTIFFS as alleged in the Claim and/or in VELKOVA's Answer and Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of the alleged employees' and servants' alleged conduct, actions or omissions.

**RESPONSE:**

6.      Any and all documents relating to or which VELKOVA claims supports her assertion that Joseph Neverauskas ("NEVERAUSKAS") and the LIMITATION PLAINTIFFS "failed to place or operate said vessel/boat in a safe, suitable and proper manner so as to give proper and adequate protection to the life and limb of any person or persons in the playpen, including Plaintiff" as alleged in the Claim and/or in VELKOVA's Answer and Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of that alleged conduct, action or omission.

**RESPONSE**:

7.      Any and all documents relating to or which VELKOVA claims supports her assertion that NEVERAUSKAS and the LIMITATION PLAINTIFFS "failed to anchor said boat/vessel in a safe, suitable and proper manner, thereby creating a danger and /or hazard to any person or persons in the playpen, including Plaintiff" as alleged in the Claim and/or in VELKOVA's Answer and Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of that alleged conduct, action or omission.

**RESPONSE**:

6

8. Any and all documents relating to or which VELKOVA claims supports her assertion that NEVERAUSKAS and the LIMITATION PLAINTIFFS "failed to adequately and/or properly anchor said boat/vessel" as alleged in the Claim and/or in VELKOVA's Answer and Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of that alleged conduct, action or omission.

**RESPONSE**:

9. Any and all documents relating to or which VELKOVA claims supports her assertion that NEVERAUSKAS and the LIMITATION PLAINTIFFS "caused said boat's/vessel's anchor to be placed, set and/or operated in a manner such that it was unsafe" as alleged in the Claim and and/or in VELKOVA's Answer and Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of that alleged conduct, action or omission.

**RESPONSE:**

10. Any and all documents relating to or which VELKOVA claims supports her assertion that NEVERAUSKAS and the LIMITATION PLAINTIFFS "failed to properly and/or adequately inspect, investigate, and /or determine the position of said boat's/vessel's anchor" as alleged in the Claim and and/or in VELKOVA's Answer and Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of that alleged conduct, action or omission.

**RESPONSE:**

7

11. Any and all documents relating to or which VELKOVA claims supports her assertion that NEVERAUSKAS and the LIMITATION PLAINTIFFS "failed to correct the condition of said boat's/vessel's anchor" as alleged in the Claim and/or in VELKOVA's Answer and Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of that alleged conduct, action or omission.

**RESPONSE:**

12. Any and all documents relating to or which VELKOVA claims supports her assertion that NEVERAUSKAS and the LIMITATION PLAINTIFFS "failed to properly and/or adequately navigate said boat/vessel" as alleged in the Claim and/or in VELKOVA's Answer and Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of that alleged conduct, action or omission.

**RESPONSE:**

13. Any and all documents relating to or which VELKOVA claims supports her assertion that NEVERAUSKAS and the LIMITATION PLAINTIFFS "failed to properly and/or adequately operate said boat/vessel" as alleged in the Claim and/or in VELKOVA's Answer and Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of that alleged conduct, action or omission.

**RESPONSE:**

14. Any and all documents relating to or which VELKOVA claims supports her assertion that NEVERAUSKAS and the LIMITATION PLAINTIFFS "failed to adequately preplan for the safe, suitable, and /or proper navigation and/or operation of the boat" as alleged in the Claim and/or in VELKOVA's Answer and Affirmative Defenses to the Admiralty Complaint

or that the LIMITATION PLAINTIFFS had privity or knowledge of that alleged conduct, action, or omission.

**RESPONSE:**

15.     Any and all documents relating to or which VELKOVA claims supports her assertion that NEVERAUSKAS and the LIMITATION PLAINTIFFS "operated said boat/vessel at an unsafe speed" as alleged in the Claim and/or in VELKOVA's Answer and Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of that alleged conduct, action or omission.

**RESPONSE:**

16.     Any and all documents relating to or which VELKOVA claims supports her assertion that NEVERAUSKAS and the LIMITATION PLAINTIFFS "operated said boat/vessel in reverse without properly and/or adequately looking to determine if there were persons, including Plaintiff, in the path behind said boat/vessel" as alleged in the Claim and/or in VELKOVA's Answer and Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of that alleged conduct, action or omission.

**RESPONSE:**

17.     Any and all documents relating to or which VELKOVA claims supports her assertion that NEVERAUSKAS and the LIMITATION PLAINTIFFS "operated said boat/vessel in reverse without proper and/or adequate visibility" as alleged in the Claim and/or in VELKOVA's Answer and Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of that alleged conduct, action or omission.

**RESPONSE:**

18.     Any and all documents relating to or which VELKOVA claims supports her assertion that NEVERAUSKAS and the LIMITATION PLAINTIFFS "operated said boat/vessel in reverse without proper and/or adequate lookouts" as alleged in the Claim and/or in VELKOVA's Answer and Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of that alleged conduct, action or omission.

**RESPONSE:**

19.     Any and all documents relating to or which VELKOVA claims supports her assertion that NEVERAUSKAS and the LIMITATION PLAINTIFFS "failed to take proper and/or adequate means and/or precautions for the safety of persons in the water, including Plaintiff, under the circumstances then and there existing" as alleged in the Claim and/or in VELKOVA's Answer and Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of that alleged conduct, action or omission.

**RESPONSE:**

20.     Any and all documents relating to or which VELKOVA claims supports her assertion that NEVERAUSKAS and the LIMITATION PLAINTIFFS "failed to warn" of any conduct, action, or omission which VELKOVA claims injured her as alleged in the Claim and/or in VELKOVA's Answer and Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of that alleged conduct, action or omission.

**RESPONSE:**

21.     Any and all documents relating to or which VELKOVA claims supports her assertion that NEVERAUSKAS and the LIMITATION PLAINTIFFS "failed to adequately train to correct, maintain, and/or prevent" any conduct, action, omission or condition which VELKOVA claims injured her   as alleged in the Claim and/or in VELKOVA's Answer and Affirmative

Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of that alleged conduct, action, omission or condition.

**RESPONSE:**

22.     Any and all documents relating to or which VELKOVA claims supports her assertion that NEVERAUSKAS and the LIMITATION PLAINTIFFS " failed to have an adequate policy, procedure, protocol, or rule to correct, maintain and/or prevent" any conduct, action, omissions or condition which VELKOVA claims injured her as alleged in the Claim and/or in VELKOVA's Answer and Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of that alleged conduct, action, omission or condition.

**RESPONSE:**

23.     Any and all documents relating to or which VELKOVA claims supports her assertion that NEVERAUSKAS and the LIMITATION PLAINTIFFS "were otherwise careless and/or negligent" as alleged in the Claim and/or in VELKOVA's Answer and Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of that alleged careless or negligent conduct, action, or omission.

**RESPONSE:**

24.     Any and all documents relating to or which VELKOVA claims supports her assertion that the LIMITATION PLAINTIFFS's "vessel was unseaworthy, not staunch, not tight, not strong, improperly and/or inadequately manned, improperly and/or inadequately equipped, improperly and/or inadequately supplied, and/or defective and in all material respects, unfit for the operational service for which it was engaged" as alleged in the Claim and/or in VELKOVA's Answer and Affirmative Defenses to the Admiralty Complaint or that the LIMITATION

PLAINTIFFS, "directly or indirectly, by and through their agents, actual or apparent, employees, and/or servants, had privity or knowledge" of these issues, conditions or "had privity or knowledge of the vessel's unseaworthy condition(s) and/or defect(s) and knew or should have known "that the danger(s) and/or risk(s) associated with the unseaworthy condition(s) and/or defect(s) of the vessel could cause severe injuries to others, including Claimant".

**RESPONSE:**

25.     Any and all documents relating to or which VELKOVA claims supports her assertion that the LIMITATION PLAINTIFFS "(a) failed to adequately inspect, maintain and/or repair said vessel/boat, (b) failed to establish and/or institute adequate inspection, maintenance, and/or repair procedures to assure said vessel/boat's equipment was maintained in good operating condition, (c) failed to establish and/or institute adequate procedures for various functions of said boat/vessel; (d) failed to require or provide said vessel/boat with an adequate crew, and/or (e) failed to adequately train and/or supervise their agents, actual or apparent, servants, and/or employees" or that the LIMITATION PLAINTIFFS had privity or knowledge of that alleged conduct, action, omissions or condition.

**RESPONSE**:

26.     Any and all documents relating to or which VELKOVA claims supports her assertion that the LIMITATION PLAINTIFFS "had privity to and knowledge of acts, events, and conditions constituting negligence and/or unseaworthiness which legally caused the occurrence and Claimant's resultant injuries and damages" as alleged in the Claim and/or in VELKOVA's Answer and Affirmative Defenses to the Admiralty Complaint.

**RESPONSE:**

February 20, 2023

Respectfully submitted,

By: _____

Attorneys for THERESA TRAN and
CHICAGO AQUALEISURE, LLC

Robert J. Franco
John J. Moroney
Randall W. Slade
Franco Moroney Buenik, LLC
500 West Madison Street, Suite 3900
Chicago, Illinois 60661-2510
(312) 469-1000
Robert.franco@francomoroney.com
John.moroney@francomoroney.com
Randall.slade@francomoroney.com

13

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS - EASTERN DIVISION**

| | |
|---|---|
| THERESA TRAN, et al., | Case No. 1:22-CV-06478 |
| Plaintiffs, | Honorable Joan B. Gottschall |
| v. | |
| John Doe, et al., | |
| Defendants. | |

**THERESA TRAN AND CHICAGO AQUALEISURE LLC'S**
**INTERROGATORIES TO CLAIMANT JACOB HOULE**

NOW COME Theresa Tran and Chicago AquaLeisure LLC, through their attorneys Franco Moroney Buenik, LLC, and hereby request that Claimant Jacob Houle ("HOULE") answer the following interrogatories under oath within thirty (30) days pursuant to the Federal Rule of Civil Procedure 33:

**DEFINITIONS AND INSTRUCTIONS**

1.      The following definitions apply to these Interrogatories:

      A.      "Admiralty Complaint" shall mean the Complaint in Admiralty for Exoneration From or Limitation of Liability filed by Theresa Tran and Chicago AquaLeisure, LLC in this case.

      B.      "Limitation Plaintiffs" shall mean Theresa Tran and/or Chicago AquaLeisure, LLC.

      C.      "Claim" shall mean "Claimant Jacob Houle's Claim for Personal Injuries in Response to Complaint in Admiralty for Exoneration From or Limitation of Liability" filed in this case.

1

2.      "Document" means any written or graphic matter of whatever kind or nature, including, without limitation, contracts, correspondence, drawings, renderings, letters, telegrams, memoranda, analyses, studies, reports, summaries, invoices, billings, notes, files, books, pamphlets, articles, e-mails, bulletins, directives, resolutions, reviews, publications, pleadings, court papers, diaries, calendars, logs, telephone bills or logs, any evidence of telephone or other conversations, tests, projections, check receipts, agreements, messages, tapes, computer tapes, computer discs, computer cards, recordings, videotapes, film, microfilm, microfiche, accounts, ledgers, magnetic media, statements, financial data, or any other means of preserving thought or expression, and means the original and each subsequent draft, each non-identical copy (whether non-identical due to alterations, attachments, blanks, comments, notes, underlining, highlighting, or otherwise) of any writing or record, however, described, wherever the document is located, however produced or reproduced, whether draft or final version.  A document with handwritten or typewritten notes, notations, comments, or editing marks, is not, and shall not be deemed, identical to one without such marks for the purposes of these document production requests.

3.      "Person" means any natural person, governmental entity or agency, and any artificial person of any type including but not limited to a corporation, partnership, joint venture, firm, trust, group, association, or any other business entity and/or their parents, affiliates, subsidiaries, predecessors, and/or successors.

4.      The terms "and" and "or" shall be construed disjunctively or conjunctively as necessary in order to bring within the scope of this pleading all responses which might otherwise be construed to be outside its scope.

5.     The singular shall always include the plural, and the present tense shall always include the past tense as necessary to bring within the scope of this pleading all responses which might otherwise be construed to be outside its scope.

6.     "Relating to" or "relate to" means to consist of, refer to, pertain to, reflect, or be in any way logically or factually connected with the matter discussed, and includes documents underlying, supporting, appended to, or used in the preparation of, any document requested.

7.     The word "communication" means any oral or written transmittal of information, opinion, belief, idea or statement whether made in person, by telephone, document, e-mail, electronic delivery, or by any other means.

8.     If an objection is made to part of a particular interrogatory, that part should be specified, and answer should be made in response to the portion of the interrogatory to which there is no objection.

9.     Whenever one of the following interrogatories calls for the identification of a person, you are directed to state the person's full name and address.  If the person is a natural person, the identification should also include the person's most recent occupation and employer, and the name and address of that employer.  If any such information was different during that period with which a particular interrogatory is principally concerned, the identification should include both current information and such different information as was applicable during the period principally at issue.

10.     Whenever one of the following interrogatories calls for the identification of a communication, you are directed to state the nature of the communication (e.g., conference,

telephone conversation); the date and place of the communication; the identity of each person who was present at or who participated in the communication; and the substance of the communication.

11.     Whenever one of the following interrogatories calls for the identification of a document, you are directed to state the date of creation or receipt of the document; the identity of its author; the identity of its addressee; the identity of each recipient of the original document or a copy thereof; a brief description of its nature (e.g., letter, telegram, e-mail, memo, etc.) and contents; its title; its number of pages; the number and subject of its attachments; its custodian; and its last known location.

12.     In lieu of identifying a particular document, you may attach a true and correct copy of such document as an exhibit to its responses to these interrogatories or produce such document for inspection and copying to counsel for propounding party as long as such document is accompanied by a notice explicitly referring to the interrogatory to which the document is alleged to relate.

13.     You are directed to identify or produce the original of each document encompassed by these interrogatories, as well as any drafts, revisions or copies of same which bear any mark or notation not present on the original, or which otherwise differ from the original.

14.     If you are unable to answer any of these interrogatories in full, you are directed to respond to the extent possible, and to specify the reasons for your inability to answer the interrogatory in its entirety.

15.     If you or your counsel does not understand any of these interrogatories, or if there exist any questions with respect thereto, your counsel is requested to contact the Limitation Plaintiffs' counsel immediately.

16.     Unless otherwise specified, these Interrogatories request information from August 1, 2022, through and including the date the Answers, including any supplements or amendments thereto.

## **INTERROGATORIES**

1.     State the name, employer, job title and date of birth of the person answering these interrogatories and all persons who assisted in answering these interrogatories and/or providing information used in these answers.

**ANSWER**:

2.     State the name, last known address, telephone number, date of birth, and employer of each person who either witnessed or claims to have knowledge of the facts alleged in HOULE's Claim or Answer and Affirmative Defenses to the Admiralty Complaint.

**ANSWER**:

3.     Do you have statements from any person who claims to have knowledge of any of the facts or claims alleged in HOULE'S Claim or Answer and Affirmative Defenses to the Admiralty Complaint?   If so, state the name of the person giving the statement, to whom it was given, whether it was written or oral, the date which it was given, and who now has possession of the written or oral statement, memorandum or recording.

**ANSWER**:

4.     State the facts which HOULE claims supports his assertion that he was injured and damaged by the acts or omissions of the agents, apparent and/or actual, of the LIMITATION PLAINTIFFS   as alleged in the Claim and/or in HOULE's Answer and Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of the alleged agents' alleged conduct, actions or omissions.

**ANSWER:**

5.  State the facts which HOULE claims supports his assertion that he was injured and damaged by the acts or omissions of the employees and servants of the LIMITATION PLAINTIFFS as alleged in the Claim and/or in HOULE's Answer and Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of the alleged employees' and servants' alleged conduct, actions or omissions.

**ANSWER:**

6.  State the facts which HOULE claims supports his assertion that Joseph Neverauskas ("NEVERAUSKAS") was acting "in the course and scope of his duties and acting as an agent" for the LIMITATION PLAINTIFFS as alleged in the Claim and the Answer and Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of any of his alleged conduct, action or omission.

**ANSWER**:

7.  State the facts which HOULE claims supports his assertion that NEVERAUSKAS or the LIMITATION PLAINTIFFS "put the La Aqua Vida vessel in high throttle reverse without proper lookout and without avoiding other vessels anchored in the area" as alleged in the Claim and/or in HOULE's Answer and Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of that alleged conduct, action or omission.

**ANSWER**:

8.  State the facts which HOULE claims supports his assertion that NEVERAUSKAS or the LIMITATION PLAINTIFFS "failed to maintain the vessel, its anchor and/or mechanical systems in a safe condition" as alleged in the Claim and/or in HOULE's Answer and Affirmative

Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of that alleged conduct, action or omission.

**ANSWER**:

9. State the facts which HOULE claims supports his assertion that NEVERAUSKAS or the LIMITATION PLAINTIFFS "failed to adequately supervise or train the operators of the vessel" as alleged in the Claim and and/or in HOULE's Answer and Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of that alleged conduct, action or omission.

**ANSWER:**

10. State the facts which HOULE claims supports his assertion that NEVERAUSKAS or the LIMITATION PLAINTIFFS "otherwise failed to operate the vessel in accordance with city, state and other codes that require operator of vessels to safely navigate and proceed on the waterways without endangering other persons or vessels on said waterways" as alleged in the Claim and and/or in HOULE's Answer and Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of that alleged conduct, action or omission.

**ANSWER:**

11. State the facts which HOULE claims supports his assertion that NEVERAUSKAS or the LIMITATION PLAINTIFFS "carelessly and negligently operated the vessel La Aqua Vida" as alleged in the Claim and/or in HOULE's Answer and Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of that alleged conduct, action or omission.

**ANSWER:**

12. State the facts which HOULE claims supports his assertion that the LIMITATION PLAINTIFFS failed to "appropriately train and/or supervise" their alleged employees and/or agents as alleged in the Claim and/or in HOULE's Answer and Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of that alleged conduct, action or omission.

**ANSWER:**

13. State the facts which HOULE claims supports his assertion that the LIMITATION PLAINTIFFS "failed to maintain the subject vessel, such that it was rendered unseaworthy" as alleged in the Claim and/or in HOULE's Answer and Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of that alleged conduct, action, omission or unseaworthy condition.

**ANSWER:**

14. State the facts which HOULE claims supports his assertion that he was injured and damaged as a "direct and proximate result of the unseaworthiness of the AQUAVIDA" as alleged in the Claim and/or in HOULE's Answer and Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of that alleged conduct, action, omission or unseaworthy condition.

**ANSWER:**

15. State the facts which HOULE claims supports his assertion that he was injured and damaged by the "negligent actions and/or omissions" of NEVERAUSKAS or the LIMITATION

8

PLAINTIFFS as alleged in the Claim and/or in HOULE's Answer and Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of that alleged conduct, actions or omissions.

**ANSWER:**

February 20, 2023                            Respectfully submitted,

                                             By: _____
                                                 Attorneys for THERESA TRAN and
                                                 CHICAGO AQUALEISURE, LLC

Robert J. Franco
John J. Moroney
Randall W. Slade
Franco Moroney Buenik, LLC
500 West Madison Street, Suite 3900
Chicago, Illinois 60661-2510
(312) 469-1000
Robert.franco@francomoroney.com
John.moroney@francomoroney.com
Randall.slade@francomoroney.com

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS - EASTERN DIVISION**

| | |
|---|---|
| THERESA TRAN, et al., | Case No. 1:22-CV-06478 |
| Plaintiffs, | Honorable Joan B. Gottschall |
| v. | |
| John Doe, et al., | |
| Defendants. | |

**THERESA TRAN AND CHICAGO AQUALEISURE LLC'S**
**PRODUCTION REQUEST TO CLAIMANT JACOB HOULE**

NOW COME Theresa Tran and Chicago AquaLeisure LLC, through their attorneys Franco Moroney Buenik, LLC, and hereby request that Claimant Jacob Houle ("HOULE") produce at our offices 500 West Madison Street, Suite 3900, Chicago, Illinois the following (together with any transcripts, memoranda or recordings purported to reflect but not evaluate same) within thirty (30) days pursuant to the Federal Rule of Civil Procedure 34:

**DEFINITIONS AND INSTRUCTIONS**

1.    The following definitions apply to this Production Request:

    a.    "Admiralty Complaint" shall mean the Complaint in Admiralty for Exoneration From or Limitation of Liability filed by Theresa Tran and Chicago AquaLeisure, LLC in this case.

    b.    "Limitation Plaintiffs" shall mean Theresa Tran and/or Chicago AquaLeisure, LLC.

1

c.      "Claim" shall mean "Claimant Jacob Houle's Claim for Personal Injuries in Response to Complaint in Admiralty for Exoneration From or Limitation of Liability" filed in this case.

2.      "Document" means any written or graphic matter of whatever kind or nature, including, without limitation, contracts, correspondence, drawings, renderings, letters, telegrams, memoranda, analyses, studies, reports, summaries, invoices, billings, notes, files, books, pamphlets, articles, e-mails, bulletins, directives, resolutions, reviews, publications, pleadings, court papers, diaries, calendars, logs, telephone bills or logs, any evidence of telephone or other conversations, tests, projections, check receipts, agreements, messages, tapes, computer tapes, computer discs, computer cards, recordings, videotapes, film, microfilm, microfiche, accounts, ledgers, magnetic media, statements, financial data, or any other means of preserving thought or expression, and means the original and each subsequent draft, each non-identical copy (whether non-identical due to alterations, attachments, blanks, comments, notes, underlining, highlighting, or otherwise) of any writing or record, however, described, wherever the document is located, however produced or reproduced, whether draft or final version.  A document with handwritten or typewritten notes, notations, comments, or editing marks, is not, and shall not be deemed, identical to one without such marks for the purposes of these document production requests.

3.      "Person" means any natural person, governmental entity or agency, and any artificial person of any type including but not limited to a corporation, partnership, joint venture, firm, trust, group, association, or any other business entity and/or their parents, affiliates, subsidiaries, predecessors, and/or successors.

2

4.     The terms "and" and "or" shall be construed disjunctively or conjunctively as necessary in order to bring within the scope of this pleading all responses which might otherwise be construed to be outside its scope.

5.     The singular shall always include the plural, and the present tense shall always include the past tense as necessary to bring within the scope of this pleading all responses which might otherwise be construed to be outside its scope.

6.     "Relating to" or "relate to" means to consist of, refer to, pertain to, reflect, or be in any way logically or factually connected with the matter discussed, and includes documents underlying, supporting, appended to, or used in the preparation of, any document requested.

7.     The word "communication" means any oral or written transmittal of information, opinion, belief, idea or statement whether made in person, by telephone, document, e-mail, electronic delivery, or by any other means.

8.     If an objection is made to part of a particular document production request, that part should be specified, and production should be made in response to the portion of the document production request to which there is no objection.  Should a party withhold any information requested by the following document production request, that party shall list any documents withheld from production or identification by reason of any claim of privilege, and state for each such document or information:

    a.    the type of document (*e.g.*, letter, interoffice memorandum,);
    b.    the identity of each person who participated in its preparation;
    c.    the identity of its signers;
    d.    the document's recipients, as well as those persons receiving copies;
    e.    the document's date;
    f.    a brief description of the nature and subject matter of the document;

3

g. the document's present or last known location and custodian of the original document; and

h. the statute, rule or decision which is claimed to give rise to the privilege.

9. You are directed to identify or produce the original of each document encompassed by these document production requests, as well as any drafts, revisions, or copies of same which bear any mark or notation not present on the original, or which otherwise might differ from the original.

10. If you object to any specific document production request, in whole or in part, you are directed to produce requested documents to the extent which it does not object, and your counsel is requested to contact counsel for the LIMITATION PLAINTIFFS to discuss said objection prior to the due date of your responses.  With respect to any document which you believe is exempt from disclosure on the grounds of attorney-client privilege, attorney-work product privilege, or any other privilege, you are directed to provide a written statement to counsel for the LIMITATION PLAINTIFFS  signed by your counsel, setting forth, as to each document: the date of creation or receipt of the document; the identity of its author; the identity of each addressee of the document; the identity of each recipient of the original document or a copy thereof; the identity of each person who had seen the original document or a copy thereof; a brief description of its nature and contents; its title; its number of pages; the nature and subject of its attachments; its custodian; its last known location; and the statute, rule or decision which purportedly gives rise to such privilege.

11. If you or your counsel do not understand any of these document production requests, or if there exist any questions with respect thereto, you counsel is requested to contact the LIMITATION PLAINTIFF's counsel immediately.

12.     Unless otherwise specified, this Request seeks documents from August 1, 2022 through and including the date of production, including any supplements or amendments thereto.

## DOCUMENTS TO BE PRODUCED

1.     Any and all documents, notes, communications, statements or summaries of statements whether written, oral, recorded, or transcribed, of, from or made by HOULE relating to the allegations in the Claim and/or HOULE's Answer and Affirmative Defenses to the Admiralty Complaint.

**RESPONSE**:

2.     Any and all documents, notes, communications, statements or summaries of statements whether written, oral, recorded, or transcribed, of, from or made by the LIMITATION PLAINTIFFS relating to the allegations in the Claim and/or HOULE's Answer and Affirmative Defenses to the Admiralty Complaint.

**RESPONSE:**

3.     Any and all documents, notes, communications, statements or summaries of statements whether written, oral, recorded, or transcribed, of, from or made by any other person or entity relating to the allegations in the Claim and/or HOULE's Answer and Affirmative Defenses to the Admiralty Complaint.

**RESPONSE**:

4.     Any and all documents relating to or which HOULE claims supports his assertion that he was injured and damaged by the acts or omissions of the agents, apparent and/or actual, of the LIMITATION PLAINTIFFS    as alleged in the Claim and/or in HOULE's Answer and Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of the alleged agents' alleged conduct, actions or omissions.

5

**RESPONSE:**

5.      Any and all documents relating to or which HOULE claims supports his assertion that he was injured and damaged by the acts or omissions of the employees and servants of the LIMITATION PLAINTIFFS as alleged in the Claim and/or in HOULE's Answer and Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of the alleged employees' and servants' alleged conduct, actions or omissions.

**RESPONSE:**

6.      Any and all documents relating to or which HOULE claims supports his assertion that Joseph Neverauskas ("NEVERAUSKAS") was acting "in the course and scope of his duties and acting as an agent" for the LIMITATION PLAINTIFFS as alleged in the Claim and the Answer and Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of any of his alleged conduct, action or omission.

**RESPONSE**:

7.      Any and all documents relating to or which HOULE claims supports his assertion that NEVERAUSKAS or the LIMITATION PLAINTIFFS "put the La Aqua Vida vessel in high throttle reverse without proper lookout and without avoiding other vessels anchored in the area" as alleged in the Claim and/or in HOULE's Answer and Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of that alleged conduct, action or omission.

**RESPONSE**:

8.      Any and all documents relating to or which HOULE claims supports his assertion that NEVERAUSKAS or the LIMITATION PLAINTIFFS "failed to maintain the vessel, its anchor and/or mechanical systems in a safe condition" as alleged in the Claim and/or in HOULE's

Answer and Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of that alleged conduct, action, omission or condition.

**RESPONSE**:

9.    Any and all documents relating to or which HOULE claims supports his assertion that NEVERAUSKAS or the LIMITATION PLAINTIFFS "failed to adequately supervise or train the operators of the vessel" as alleged in the Claim and and/or in HOULE's Answer and Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of that alleged conduct, action or omission.

**RESPONSE:**

10.    Any and all documents relating to or which HOULE  claims supports his assertion that NEVERAUSKAS or the LIMITATION PLAINTIFFS "otherwise failed to operate the vessel in accordance with city, state and other codes that require operator (sic) of vessels to safely navigate and proceed on the waterways without endangering other persons or vessels on said waterways" as alleged in the Claim and and/or in HOULE's Answer and Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of that alleged conduct, action or omission.

**RESPONSE:**

11.    Any and all documents relating to or which HOULE claims supports his assertion that NEVERAUSKAS or the LIMITATION PLAINTIFFS "carelessly and negligently operated the vessel La Aqua Vida" as alleged in the Claim and/or in HOULE's Answer and Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of that alleged conduct, action or omission.

**RESPONSE:**

12.     Any and all documents relating to or which HOULE claims supports his assertion that the LIMITATION PLAINTIFFS failed to "appropriately train and/or supervise" their alleged employees and/or agents  as alleged in the Claim and/or in HOULE's Answer and Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of that alleged conduct, action or omission.

**RESPONSE:**

13.     Any and all documents relating to or which HOULE claims supports his assertion that the LIMITATION PLAINTIFFS "failed to maintain the subject vessel, such that it was rendered unseaworthy" as alleged in the Claim and/or in HOULE's Answer and Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of that alleged conduct, action,  omission or unseaworthy condition.

**RESPONSE:**

14.     Any and all documents relating to or which HOULE claims supports his assertion that he was injured and damaged as a "direct and proximate result of the unseaworthiness of the AQUAVIDA"  as alleged in the Claim and/or in HOULE's Answer and Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had privity or knowledge of that alleged conduct, action, omission  or unseaworthy condition.

**RESPONSE:**

15.     Any and all documents relating to or which HOULE claims supports his assertion that he was injured and damaged by the "negligent actions and/or omissions" of NEVERAUSKAS or the LIMITATION PLAINTIFFS as alleged in the Claim and/or in HOULE's Answer and

Affirmative Defenses to the Admiralty Complaint or that the LIMITATION PLAINTIFFS had

privity or knowledge of that alleged conduct, actions or omissions.

**RESPONSE:**


February 20, 2023                                    Respectfully submitted,


                                        By:    _____

                                               Attorneys for THERESA TRAN and
                                               CHICAGO AQUALEISURE, LLC



Robert J. Franco
John J. Moroney
Randall W. Slade
Franco Moroney Buenik, LLC
500 West Madison Street, Suite 3900
Chicago, Illinois 60661-2510
(312) 469-1000
Robert.franco@francomoroney.com
John.moroney@francomoroney.com
Randall.slade@francomoroney.com