# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| In the Matter of the Complaint of Chicago AquaLeisure, LLC, and Theresa Tran, individually and as owners and/or owners pro hac vice of the vessel LA AQUAVIDA, Official Number GFNCY003E20 & Documentation #1155272, for Exoneration from or Limitation of Liability | Case No. 22-cv-6478<br><br>Judge Joan B. Gottschall |

## MEMORANDUM OPINION AND ORDER

This admiralty case arises out of an alleged boating accident involving a vessel named *La AquaVida* ("*AquaVida*") that occurred on August 13, 2022, off the Chicago coastline in an area of Lake Michigan commonly referred to as "The Playpen" ("the incident"). *See* Compl. 1, ECF No. 1. The *AquaVida*'s alleged owners, Theresa Tran and Chicago AquaLeisure, LLC (collectively "limitation plaintiffs"), filed a complaint in this court on November 18, 2022, under the Limitation of Shipowners' Liability Act ("Limitation Act"), 46 U.S.C. § 30523 (West eff. Dec. 23, 2022), *formerly codified at* 46 U.S.C. § 30505, and Supplemental Rule F of the Supplemental Rules for Certain Admiralty and Maritime Claims ("Supplemental Rules") seeking exoneration from liability for the incident or limitation of their liability to the *AquaVida*'s fair market value, which they contend is $71,637. *See* Compl. 5, 6–7. In accordance with Supplemental Rule F(3) and (4), this court entered an order on November 28, 2022, enjoining the institution and prosecution of all other suits "with respect to any claims for death, injuries, property loss, or damages, arising out of, resulting from, or in any manner connected with the incident." ECF No. 11 at 1–2. The order also set a deadline of January 25, 2023, for filing claims in this court. *See id*. at 2; *see also* Supp. R. F(4). Three personal injury claims have been filed. ECF Nos. 29, 19, 16. Claimants Marija Velkova, Lana Batochir, and Jacob Houle wish to pursue their claims in state court where, unlike in this proceeding, they have the right to a jury trial. *See In re Ill. Marine Towing, Inc.*, 498 F.3d 645, 649–50 (7th Cir. 2007). To that end, claimants jointly move the court to lift the injunction and to stay this case until litigation in state

court arising out of the incident has concluded. *See* Jt. Mot. to Lift Injunction & Stay 3–4, ECF No. 33.

## I. Legal Background

The Limitation Act provides in pertinent part, "[T]he liability of the owner of a vessel for any claim, debt, or liability . . . shall not exceed the value of the vessel and pending freight . . . [so long as] any loss, damage, or injury by collision . . . [occurs] without the privity or knowledge of the owner." 46 U.S.C. § 30523. "Congress passed the Limitation Act in 1851 'to encourage ship-building and to induce capitalists to invest money in this branch of industry,'" as well as to put American shipping on an equal footing with other nations that had similar limitation acts. *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 446–47 (2001) (citations omitted). In 28 U.S.C. § 1333(1), Congress granted federal courts "exclusive jurisdiction" over Limitation Act claims subject to the following clause, commonly referred to as the savings to suitors clause: "[S]aving to suitors in all cases all other remedies to which they are otherwise entitled." *Roen Salvage Co. v. Sarter*, 17 F.4th 761, 762 (7th Cir. 2021) (quoting § 1333(1)). Supplemental Rule F governs Limitation Act proceedings. Together, the Limitation Act and Supplemental Rule F establish a procedure sometimes referred to as concursus:

> The district court secures the value of the vessel or owner's interest, marshals claims, and enjoins the prosecution of other actions with respect to the claims. In these proceedings, the court, sitting without a jury, adjudicates the claims. The court determines whether the vessel owner is liable and whether the owner may limit liability. The court then determines the validity of the claims, and if liability is limited, distributes the limited fund among the claimants.

*Lewis*, 531 U.S. at 448 (heading omitted).

## II. Factual and Procedural Background

Limitation plaintiffs allege as follows in their complaint: Beginning at approximately 2:30 p.m. on the date of the incident, a private group rented the *AquaVida* under a "bareboat charter agreement," meaning that "the renters took over dominion and control of the vessel." Compl. ¶¶ 8, 14. No limitation plaintiff nor any employee of a limitation plaintiff was present when the incident occurred. Compl. ¶ 5. The renters selected and hired non-party

2

Joseph Neverauskas ("Neverauskas"), a licensed U.S. Coastguard captain, who was operating the *AquaVida* when the incident occurred. Compl. ¶¶ 6–7.

Limitation plaintiffs allege that the *AquaVida* struck a raft. Compl. ¶ 16. According to claimants, the *AquaVida* collided with an anchored vessel, the *Navigator*, and "its raft attached thereto," and the *Navigator* in turn struck another anchored vessel, the *Giddy Up*. Mot. to Lift Injunction & Stay ¶ 1; *see also* Houle Claim ¶ 8, ECF No. 29; Velkova Claim ¶ 8, ECF No. 19; Batochir Claim ¶ 8, ECF No. 16.

Two of the three claimants in this court—Lana Batochir and Marija Velkova—also filed suit in the Circuit Court of Cook County, Illinois, against limitation plaintiffs and Neverauskas. Velkova Claim ¶ 3; Batochir Claim ¶ 3. The third claimant, Jacob Houle, represents that he wishes to file suit in Cook County Circuit Court against the same defendants if the injunction is lifted. Houle Claim ¶ 3.

The order of November 28, 2022, stayed those proceedings. On February 14, 2023, this court granted limitation plaintiffs' motion for entry of an order of default against all non-appearing claimants. ECF No. 27. Appearing claimants filed their pending motion to lift the stay of related state court suits on March 8, 2023.

### III. Analysis

"Some tension exists between the Limitation Act and the saving to suitors clause." *In re Ill. Marine Towing*, *supra*, 498 F.3d at 649 (citing *Lewis*, 531 U.S. at 448). "One statute gives suitors the right to a choice of remedies, and the other statute gives vessel owners the right to seek limitation of liability in federal court." *Lewis*, 531 U.S. at 448. Specifically, "the savings to suitors clause evinces a preference for common law remedies in the forum of the claimant's choice and trial by jury is an example of a remedy available to suitors." *In re Ill. Marine Towing*, 498 F.3d at 649 (citing *Lewis*, 531 U.S. at 454–55; internal quotation omitted). The Supreme Court has resolved this tension by holding that the federal district courts "have discretion to stay or dismiss Limitation Act proceedings to allow a suitor to pursue his claims in state court," provided that the "District Court satisfies itself that a vessel owner's right to seek

limitation will be protected." *Lewis*, 531 U.S. at 454. The Court has held that a vessel owner's interests are adequately protected in at least two circumstances: "when there is only one claimant, or when the total demanded by multiple claimants does not exceed the value set by the Limitation Act." *Roen Salvage*, 17 F.4th at 762; *accord Lewis*, 531 U.S. at 451.

In *Lewis*, the Supreme Court affirmed a decision to stay a Limitation Act proceeding in favor of state court litigation. The Court held that the vessel owner's Limitation Act "rights were protected by [the claimant's] stipulation that his claim did not exceed the limitation fund, [claimant's] waiver of any defense of res judicata with respect to limitation of liability, and the District Court's decision to stay the Limitation Act proceedings pending state court proceedings." 531 U.S. at 451–52. The Seventh Circuit extended *Lewis*'s reasoning to stipulations filed by multiple claimants in *Illinois Marine Towing*, 498 F.3d at 651–53. The *Illinois Marine Towing* court held that the following joint stipulations entered by the claimants adequately protected the vessel owners' Limitation Act rights: claimants stipulated:

(1) that the district court had "exclusive jurisdiction over all limitation of liability issues which arose out of" the accident;

(2) that claimants "agree[d] to waive any claim of *res judicata* respecting any limitation of liability issues as might arise in the event of entry of judgment in any state court;"

(3) that claimants would "only seek their respective pro-rata proportional share of the limitation fund" if the district court decided that limitation was appropriate;

(4) that "Claimants will in no event seek any amount beyond the value of the limitation fund[, if any,] as determined by the" district court; and

(5) that the federal court "has exclusive jurisdiction to determine the value of the limitation fund, and so long as the Claimants have an opportunity to obtain an independent appraisal or related valuation, [Claimants] will stipulate to the value as determined by" the district court.

*Ill. Marine Towing*, 498 F.3d at 648.

In the case at hand, claimants propose to make seven concessions. *See* Proposed Concessions 1–3, ECF No. 33-2.

4

### A. Binding Stipulations Not Required.

Limitation plaintiffs first argue that the claimants' proposed concessions must be in the form of binding stipulations, citing *In re Holly Marine Towing, Inc.*, 270 F. 3d 1086 (7th Cir. 2001). Resp. Opp'n Mot. to Lift Stay 8–9, 12–13, ECF No. 38. But *Holly Marine* does not require binding stipulations. On the contrary, the Seventh Circuit noted that, although the claimants called their proposed conditions a stipulation, the "term 'stipulation,' though customary in Limitation Act proceedings, is a bit of a misnomer, since these stipulations are unilateral promises rather than agreements." *In re Holly Marine*, 270 F. 3d at 1088. Here, claimants' proposed concessions similarly take the form of unilateral promises. Nothing in *Holly Marine* casts doubt on the use of such promises as a basis for lifting an injunction.

The Seventh Circuit has since made clear that no particular form of stipulations or concessions is required. *See Roen Salvage*, 17 F.4th at 763. The responsibility for crafting appropriate protections for limitation plaintiffs ultimately falls to the district court: "When lifting or modifying an injunction to permit litigation in state court, a federal district judge should make any provisos that are essential to safeguard the federal right under" the Limitation Act. *Id.* at 673–74. Claimants' reliance on proposed concessions rather than stipulations therefore accords with Seventh Circuit law.

### B. Claimants' Proposed Concessions

As limitation plaintiffs acknowledge (Resp. Opp'n Mot. to Lift Stay 12), claimants' first five proposed concessions are substantively identical to the stipulations approved in *Illinois Marine Towing*. *Compare* Proposed concessions 1–2, *with Ill. Marine Towing*, 498 F.3d at 648.

Proposed concession six raises no concerns because it effectively restates the Seventh Circuit's holding in *Roen Salvage*, *supra*, that no "federal statute entitles a vessel owner

5

to have a federal judge determine exoneration" from liability, as contrasted with limitation of liability. 17 F.4th at 763.

Limitation plaintiffs argue that proposed concession seven "takes away at least part of the prior proposed concessions." Resp. Opp'n Mot. to Lift Stay 12. Proposed concession seven reads:

> 7. Further, Claimants concessions are meant only to adequately preserve Limitation Plaintiffs' rights, as alleged owner(s)/owner(s) pro hac vice of the AQUAVIDA: By making such concessions, Claimants do not concede that limitation of liability is appropriate in this matter, nor do Claimants concede any of the limitation of liability issues raised by Limitation Plaintiffs in their Complaint in this matter; in this regard, Claimants Claims, Answers, and Affirmative Defenses in this matter speak for themselves.

Proposed Concessions 3.

Limitation plaintiffs do not identify any other specific concession proposed concession seven allegedly abrogates, and they do not develop this one-sentence argument further. *See* Resp. Opp'n Mot. to Lift Stay 12. The court deems this "perfunctory and underdeveloped argument[ ]," which is "unsupported by pertinent authority," waived. *Greenbank v. Great Am. Assurance Co.*, 47 F.4th 618, 629 (7th Cir. 2022) (citing *Gross v. Town of Cicero*, 619 F.3d 697, 705 (7th Cir. 2010)).

Waiver aside, the court reads proposed concession seven as restating and confirming settled law that claimants retain their right to contest limitation of liability issues within the exclusive jurisdiction of this court. *See Lewis*, 531 U.S. at 450–51; *Roen Salvage*, 17 F.4th at 764. This reading renders proposed concession seven both unproblematic and unnecessary because "[l]itigants do not need to concede or stipulate that federal statutes will be observed." *Roen Salvage*, 17 F.4th at 764.

### C. Protection From Contribution Claim by the Vessel's Captain

Next, limitation plaintiffs contend that they remain exposed to a potential contribution claim by Neverauskas, the hired captain who allegedly operated the *AquaVida* when the incident occurred. *See* Resp. Opp'n Mot. to Lift Stay 7–13. The Seventh Circuit considered a similar argument in *Holly Marine*. The limitation plaintiff in *Holly Marine* owned a barge, which it

chartered to a construction company to be used to perform work on a bridge spanning the Chicago Sanitary and Ship Canal. 270 F.3d at 1087. A crane manufactured by a claimant referred to as JLG tipped over, killing one worker and injuring another. *See id*. The injured worker and the deceased worker's estate filed claims against the barge owner in the Limitation Act proceeding that followed. *Id*. at 1088. JLG also filed a claim for contribution against the barge owner in the event JLG was found liable for the accident. *Id*. (citing Joint Tortfeasor Contribution Act, 740 Ill. Comp. Stat. § 100/2; other citations omitted). The injured worker and deceased worker's estate moved to lift the injunction against state court litigation and filed stipulations intended to protect the barge owner's Limitation Act rights. *See id*. But JLG did not join the stipulations. *Id*.

In reversing the district court's order partially lifting the injunction, the Seventh Circuit wrote,

> The fact that JLG is not a party to the stipulation is troublesome, . . . for it means that the stipulation does not protect [the barge owner] from being held liable, in a suit for contribution by JLG, in an amount greater than its stake in the suit. Not only is JLG not a signer of the stipulation; it has not even bothered to file a brief in this appeal. Its plans and intentions are unknown.
>
> \* \* \* \*
>
> [T]he fact that a contribution claim is a claim subject to limitation is not in itself enough to protect [a vessel owner]'s statutory right to limitation fully. For in a suit for contribution JLG might try to show that [the vessel owner]'s stake exceeded [the limitation amount] and if it obtained a ruling to that effect it might try to plead that ruling as res judicata in the postponed limitation proceeding.

*In re Holly Marine*, 270 F. 3d at 1089.

Like JLG, Neverauskas has a potential contribution claim against the alleged owners of the *AquaVida*. Also as in *Holly Marine*, Neverauskas has not joined the proposed concessions intended to protect limitation plaintiffs' rights, and the court does not know anything about his intentions. Thus, claimants' proposed concessions would not protect the *AquaVida*'s owners if Neverauskas were to assert a contribution claim against limitation plaintiffs in state court, obtain a judgment, and plead it as res judicata in this case. *See In re Holly Marine*, 270 F.3d at 1089.

Claimants attempt to distinguish *Holly Marine* because, unlike JLG, Neverauskas did not file a timely claim in this court (*see* Supp. Rule F(5)) and an order of default has been entered against non-appearing claimants. *See* Reply 7, ECF No. 41. Claimants do not explain what effect they believe entry of an order of default has on Neverauskas. *See id*. By failing to file a timely claim and answer, a potential claimant in default loses the "right to recover from the limitation fund." *In re Columbia Leasing L.L.C.*, 981 F. Supp. 2d 490, 494 (E.D. Va. 2013) (citations omitted); *see also Ochoa v. Material Serv. Corp.*, 590 F. Supp. 3d 1109, 1113 (N.D. Ill. 2022). The concern that must be addressed, however, is not that Neverauskas will attempt to collect from any limitation fund created by this court but rather that he will obtain a state court judgment against limitation plaintiffs in excess of the limitation fund. *See In re Holly Marine*, 270 F.3d at 1089. Entry of a non-final order of default will not prevent Neverauskas from doing that; a default judgment would be required. *See In re Columbia Leasing*, 981 F. Supp. 2d at 495–96. Claimants have not requested a default judgment and have instead moved to stay this case. In these circumstances, the court is not persuaded that the entry of a non-final order of default against Neverauskas sufficiently protects limitation plaintiffs from the possibility of Neverauskas filing a contribution claim or crossclaim in state court and then pleading any judgment he obtains as res judicata in this limitation proceeding. *See In re Holly Marine*, 270 F.3d at 1089.

Nevertheless, the Seventh Circuit has instructed district courts to craft adequate protection for shipowners' interests when lifting injunctions of state court suits. *Roen Salvage*, 17 F.4th at 763–64. Accordingly, the court adopts the measures used in *In re Spirit Cruises, LLC*, 2011 WL 1838918, at *5 (N.D. Ill. May 12, 2011). These measures ultimately derive from the Second Circuit's decision in *In re Dammers & Vanderheide & Scheepvaart Maats Christina B.V.*, 836 F.2d 750, 754, 758–60 (2d Cir. 1988). The primary innovation is to stay entry of judgment and any enforcement of any recovery obtained in state court pending the outcome of the federal limitation proceeding, thereby preventing entry of a state court judgment in excess of the vessel owners' stake. *See In re Dammers*, 836 F.2d at 758–760. This court will also be obligated to stay any state court, or other, claims by Neverauskas or other third-party claimants if they do not

agree to concessions adequate to protect limitation plaintiffs' rights. *See id*. at 758. This procedure preserves claimants' rights to proceed with their claims in state court while protecting the *AquaVida*'s alleged owners from potential crossclaims or contribution claims brought by Neverauskas and prevents Neverauskas from obtaining a final judgment in state court which could be used to plead res judicata in this court. *See id.*

### D. Efficiency Arguments

Finally, limitation plaintiffs argue that it would be more efficient and cost effective for the court and litigants to resolve this case in federal court. *See* Resp. Opp'n Mot. to Lift Stay 13–14. They predict that litigating in state court will take years and will result in a costly jury trial while the concursus process in this court would, they believe, be faster and less expensive for all involved. *See id*. at 14. They represent that a $1 million insurance policy covers the *AquaVida* and that this policy will be used to pay litigation expenses as well as any judgments against the vessel's owners. *Id*. If litigation commences in state court, limitation plaintiffs contend that their defense costs may exhaust the policy's coverage entirely. *See id.*

Limitation plaintiffs' efficiency arguments are entirely speculative. No case growing out of the incident, including this suit, has proceeded past the pleadings stage. This court therefore has no way of predicting whether litigating in a federal or state forum is likely to be more efficient from a cost or time perspective.

More importantly, these arguments about relative efficiency do not account for the importance Congress and the Supreme Court have placed on preserving claimants' common law rights in state court, including the right to a jury trial, preserved by the savings to suitors clause. *See Lewis*, 531 U.S. at 453–55. As the Seventh Circuit has explained, recent "Supreme Court cases . . . have diminished the value of the concursus's contribution to judicial efficiency and maintained that the primary purpose of the [Limitation] Act is limitation of liability." *In re Ill. Marine Towing*, 498 F.3d at 651 (citing *Lewis*, 531 U.S. at 453; other citation omitted). Based on this understanding of the Limitation Act's purpose, the Seventh Circuit has held that "the concursus may be more efficient, but the interest of judicial efficiency should not trump the right

9

of claimants to choose their respective fora and the corresponding right to a jury trial that a state proceeding may provide." *Id*. at 652 (citing *Odeco Oil & Gas Co. v. Bonnette,* 4 F.3d 401, 404–05 (5th Cir. 1993)). Here, claimants have made their preference for a state court forum clear despite limitation plaintiffs' efficiency concerns and their representations about the allegedly applicable insurance policy. *See, e.g.*, Reply 12. Because limitation plaintiffs' interests can be adequately protected, claimants' preferences for a state forum guaranteed by the savings to suitors clause take priority over the relative efficiency, if any, of the concursus process.

### IV. Conclusion

For the reasons stated, claimants' joint motion to lift the stay of state court suits imposed by the order entered November 28, 2022, is granted. The court accepts and incorporates claimants' proposed concessions into its order lifting the stay. Furthermore, the court stays entry of judgment and any enforcement of any recovery obtained in state court pending the outcome of this limitation proceeding. This court will also be obligated to stay any state court, or other, claims brought by Neverauskas or any other third-party claimants if they do not agree to concessions adequate to protect limitation plaintiffs' rights. A separate formal order lifting the injunction will be entered. Consistent with the foregoing rulings, counsel are directed to submit a proposed order formally lifting the injunction within seven days.

Dated: May 11, 2023 　　　　　　　　　　　　/s/　　　　　　　　　　
　　　　　　　　　　　　　　　　　　　　Joan B. Gottschall
　　　　　　　　　　　　　　　　　　　　United States District Judge

10